## AMELIA MEYER v. TRAVELERS INSURANCE COMPANY.[1]

July 2, 1915.

Nos. 19,297—(66).

**Res gestæ.**

1. The insured in an accident policy was shot by a revolver held in his

[1] Reported in 153 N. W. 523.

---

Note.—The cases passing upon statements made some time after accident as *res gestæ* are reviewed in a note in 42 L.R.A.(N.S.) 917.

For cases passing upon duty of insured to negative suicide, see notes in 4 L.R.A.(N.S.) 636 and 50 L.R.A.(N.S.) 1008.

own hands while in his room. To a friend coming to his room two or three minutes, or not more than a few minutes, later, he stated, in response to an inquiry as to what had happened, that he accidentally shot himself. *Held,* that such statement was properly received in evidence as part of the *res gestœ.*

**Insurance — evidence of accident.**

2. The evidence sustains a finding that the insured came to his death by accident.

Action in the district court for Goodhue county to recover $3,300 upon defendant's policy of accident insurance. The answer alleged that the insured wrongfully took his own life by the intentional discharge of a pistol. The case was tried before Johnson, J., and a jury which returned a verdict for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*A. A. Tenner* and *F. M. Wilson,* for appellant.

*A. J. Rockne,* for respondent.

DIBELL, C.

This is an action by the plaintiff, Amelia Meyer, to recover upon an accident insurance policy issued to one Frederick W. Meyer, Jr., her son, in which she was the beneficiary. There was a verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment or for a new trial.

The policy was in full force at the time of Meyer's death. It is conceded that he came to his death from a revolver held in his hand. The question is whether he committed suicide. If he did, the plaintiff cannot recover. If he did not, she can.

1. Some time between 7 and 8 on Saturday evening, June 21, 1912, Meyer went to his rooms on the second floor of the Anderson Block in Zumbrota, the lower part of which was occupied by a store of which he was manager. He shot himself when in his room, the bullet lodging in the region of the heart. The explosion was heard by several but apparently not identified. He called from his room to his landlady for a doctor, naming the one he desired. Before the doctor came, an acquaintance, working in the store below,

came to his room, called there by the landlady. He rapped, a few words were exchanged, and Meyer opened the door. He had his coat and vest off, was holding his hand on his left side, and was bleeding and weak and pale. Upon inquiry as to what the matter was, using the words of the witness: "He said he accidentally shot himself."

This statement was allowed to go to the jury as a part of the *res gestæ;* and the defendant claims it to be error.

The precise time at which the exclamation was made after the shooting cannot be fixed. Witnesses do not measure time accurately. It may have been two minutes or three, or it may have been several; but the time was very brief, quite certainly not much longer than indicated.

The utterances to which the phrase *res gestæ* is applied, in cases like the one before us, are hearsay utterances, and they are received as one of the several recognized exceptions to the hearsay rule. Their spontaneity accredits them. So it is an essential of a declaration admissible under the *res gestæ* doctrine that its spontaneity give the unsworn statement a credit justifying a jury in hearing and weighing and valuing it along with other items of evidence. Spontaneity or the lack of it may be evidenced by the lapse of time between the main act and the declaration, the opportunity or likelihood of fabrication, the inducement to fabrication, the natural excitement of the declarant, the place of the declaration, the presence there of the visible results of the act or occurrence to which the utterance relates. An utterance made in response to a question may be less indicative of spontaneity than an uninvited one. A declaration against interest may indicate spontaneity more certainly than a self-serving one. Time is an important but not definitely controlling consideration. The lapse of time gives an opportunity for deliberation and may be suggestive of a likelihood of fabrication. It may be one minute or many minutes. It may be so great that the law will say that the declaration fails to illustrate or characterize the act and is not a part of the *res gestæ.* Chief Justice Bleckley puts a part of the thought neatly in this way: "What the law altogether distrusts is not after-speech but after-thought." Travelers Ins. Co. v. Shep-

pard, 85 Ga. 751, 775, 12 S. E. 18, 26. Mr. Wigmore gives the subject a thorough consideration. 3 Wigmore, Ev. §§ 1749, 1750. And see 4 Chamberlayne, Ev. § 2984, et seq.; 2 Jones, Ev. § 344, et seq.

We think that the evidence was properly admissible as part of the *res gestæ*.

2. It is a further contention of the defendant that, the declaration admitted, the evidence was such as to compel a finding that Meyer committed suicide.

The argument of counsel in this connection is largely founded upon the relations between Meyer and a young woman of Zumbrota to whom he had at one time been engaged. The engagement was broken off; but they continued to be friends, he continued boarding at her mother's home, and they associated together within and without the home. His infatuation for this woman is the only motive suggested for his suicide. He was a man 30 years of age, unmarried, occupied a good position, was of a jovial disposition, well connected in family, had a father and mother and sisters living, was apparently happy with them, and had arranged to pass the coming Sunday in a sort of family reunion at the lake in celebration of the birthday of a sister. We have examined the record word for word with reference to the claim that the evidence conclusively shows that he committed suicide because of rejected love. He had made remarks one time and another, perhaps three or four times, to the effect that he might make away with himself, or that he would kill someone whom it is sought to put in the rôle of a successful rival and of whom it is said he was jealous. These remarks may have been idle, or they may have been uttered in a melancholy vein, or they may have been serious. On the day of his shooting he and the young woman had one or more talks. They probably parted pleasantly. There was some talk of a renewal of their broken engagement. She was going to a dance that night and he telephoned her good-by, either in anger or as a well-wisher. In all their acquaintanceship their relations were generally friendly and all the time he was boarding at the young woman's home. The evidence is far short of so decisive a character as to compel the jury to find that Meyer because of unre-

ciprocated love for this young woman sought relief in suicide. They may well have concluded that she was not a factor in it.

The claim is made that Meyer could not have shot himself with the revolver accidentally, or that such result was practically impossible. Of course it cannot be said just how the shot came about by accident. Meyer took the gun out of the dresser drawer for some purpose, either for examination or for use, and it was discharged either accidentally or intentionally. It could have been discharged accidentally with the result that followed. We cannot say that the evidence required the jury to find that it was done intentionally. It was a question of fact for them.

The case is well within such cases as: Peterson v. Prudential Ins. Co. 115 Minn. 232, 132 N. W. 277; O'Connor v. Modern Woodmen of America, 110 Minn. 18, 124 N. W. 454, 25 L.R.A.(N.S.) 1244; Lindhal v. Supreme Court I. O. F. 100 Minn. 87, 110 N. W. 358, 8 L.R.A.(N.S.) 916, 117 Am. St. Rep. 666; Sartell v. Royal Neighbors of America, 85 Minn. 369, 88 N. W. 985.

Some other errors are assigned. We have examined them. We think there are no serious ones. The two main questions discussed are the ones determinative of the appeal.

Order affirmed.

SCHALLER, J., took no part.