ANNA ROACH v. GREAT NORTHERN RAILWAY COMPANY.

June 9, 1916.

Nos. 19,806—(185).

**Negligence — use of high power headlight in railroad yard.**

1. The evidence justified the finding of the jury that the defendant was negligent in using on a switching engine in its railroad yards a 1500 candle power headlight such as is used on engines in road service.

**Assumption of risk.**

2. Under the evidence the plaintiff's intestate did not as a matter of law assume the risk of working about such a headlight.

**Res gestae — evidence admissible.**

3. The court did not err in receiving in evidence as a part of the *res gestae* statements made by the deceased at a time not precisely shown, but perhaps as long as 45 minutes after the accident, the deceased at the time suffering intense pain, and having so suffered since the accident, there being some attendant excitement, and the circumstances on the whole tending to indicate an absence of fabrication and to accredit the statements as trustworthy.

Action in the district court for Lyon county by the administratrix of the estate of Thomas Roach, deceased, to recover $60,000 for the death of her intestate while in the employ of defendant in interstate commerce. The case was tried before Olsen, J., and a jury which returned a verdict

[1]Reported in 158 N. W. 232.

Note.—Upon the duty and liability of railroad company under the Federal and State Railway Safety Appliance Acts, see notes in 20 L.R.A. (N.S.) 473, 41 L.R.A.(N.S.) 49.

The cases passing upon statements made some time after accident as res gestae, are reviewed in a note in 42 L.R.A.(N.S.) 917.

133 M.—17.

for $17,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*Tom Davis* and *Ernest A. Michel,* for respondent.

DIBELL, C.

The plaintiff's intestate was killed in the railroad yards of the defendant at Willmar. The jury found that he was at the time employed by the defendant in interstate commerce. This finding is not challenged. There was a verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment or a new trial.

1. The deceased was working as a switchman's helper. He was run over and killed by a car shunted on to a sidetrack by a switching engine working on the lead. This switching engine was equipped with a road engine electric carbon headlight of 1500 candle power and used a reflector. The statute requires every locomotive operated in road service to be equipped with "an electric or other headlight of at least fifteen hundred (1,500) candle power, measured without the aid of a reflector," and requires on "every locomotive engine regularly used in switching cars or trains a headlight of at least fifty (50) candle power, measured without the aid of a reflector." G. S. 1913, § 4421. Of course this statute does not make the use of a 1500 candle power light on switching engines unlawful or negligent. It recognizes the difference between the needs of a road operation and a switching operation. The negligence alleged is the use of a headlight of 1500 candle power with a reflector. Whether such use constituted negligence was submitted to the jury. The evidence is that such a headlight blinds and dazzles the eye so that one is unable to see objects distinctly or measure distances accurately. This is common knowledge. Switchmen work on and about the cars and engines in the yard and must be able to see clearly and to measure distances accurately. We are of the opinion that the jury's finding of negligence is supported by the evidence.

2. The deceased had worked in the yards and about such headlights for a considerable time. The defendant claims that as a matter of law he assumed the risk of their use. The question of the assumption of risks was submitted to the jury and its finding negatived such assumption.

While the deceased must have been aware of the kind of headlight used, or at least that it was a bright, strong light, we are not prepared to say as a matter of law he appreciated the danger and assumed the risk. The question was for the jury.

3. The accident to the deceased resulted in the immediate loss of one arm and one leg. He lived about a week. To a fellow workman who was the first one to him a few moments after the accident he said, in response to an inquiry, using the language of the witness: "He says that—the car going in on 5 got him, and I says * * * 'you knew the car was going there, didn't you,' and he says, 'well'—he says he 'didn't see the car' or 'couldn't see the car' and that is all he said; and he says, 'don't ask me any more but go and get me a doctor.' ". No question is made as to the admissibility of this testimony. It was clearly admissible. The deceased was taken in the caboose to the depot and was carried from there to the hospital. He reached there perhaps 15 minutes after the accident. The witness Walker, an old time friend, reached the hospital about the same time and testified as to what the deceased said. This testimony is the subject of exception. It is claimed by the plaintiff to be a part of the *res gestae*. The exact time of the conversation is not shown and no effort was made to fix it precisely. It is fairly to be inferred that it occurred within 30 minutes after the deceased reached the hospital—perhaps considerably earlier. The deceased was suffering intense pain and was crying for relief. He was suffering from the shock incident to his injury and there was some attendant excitement. Walker, testifying to the conversation, said: "He said 'the light was so bright it blinded him and he couldn't see and the car struck him;' that was all he said in regard to the accident." This statement was hearsay and self-serving. It tended to relieve the deceased of fault and to put blame upon the defendant. If admissible it is so because of the well-recognized exception to the hearsay rule.

There is no precise rule determining just when statements are part of the *res gestae*. The general doctrine is well enough understood; its application is difficult. It may accurately enough be said that there is no specific rule of precise application. In each case the application must depend upon the particular facts. State v. Alton, 105 Minn. 410, 117 N. W. 617, 15 Ann. Cas. 806; Hedlund v. Minneapolis St. Ry. Co.

120 Minn. 319, 139 N. W. 603; 3 Wigmore, Ev. § 1750. The subject has had recent consideration by this court in Meyer v. Travelers Ins. Co. 130 Minn. 242, 153 N. W. 523, and in Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L.R.A. 1915E, 812. In the latter case a number of authorities are collected. There is some element of discretion in the trial court in determining whether a statement is a part of the *res gestae.* "Each case must depend upon its own peculiar circumstances, and be determined by the exercise of sound judicial discretion." Gilfillan, C. J., in O'Connor v. Chicago, M. & St. P. Ry. Co. 27 Minn. 166, 6 N. W. 481, 38 Am. Rep. 288. "In determining whether the statement made is part of the *res gestae* * * * the trial court has a wide range of discretion." Hallam, J., in Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L.R.A. 1915E, 812. The discretion or judgment of the trial court is not absolute. It is reviewable by this court. See State v. Alton, 105 Minn. 410, 117 N. W. 617, 15 Ann. Cas. 806; Hyvonen v. Hector Iron Co. 103 Minn. 331, 115 N. W. 167, 123 Am. St. 332; State v. Horan, 32 Minn. 394, 20 N. W. 905, 50 Am. Rep. 583. In passing upon the admissibility of testimony claimed to constitute a part of the *res gestae,* the trial court determines whether unsworn statements are so accredited that they may go to the jury and be weighed and valued by it, and in determining this it considers whether the statements are spontaneous; whether there was an opportunity of fabrication or a likelihood of it; the lapse of time between the act and the declaration relating to it; the attendant excitement; the mental and physical condition of the declarant, and other circumstances important in determining whether the trustworthiness of the unsworn statements is such that they may safely go to the jury. In reviewing the trial court's ruling this court defers to its determination of the preliminary facts bearing upon the propriety of receiving the testimony. To this extent its admissibility is within the sound judgment of the trial court.

A considerable time, measured in minutes, elapsed between the accident and the decedent's statements relative to it—a longer time than is usual when the application of the *res gestae* doctrine is sought. Time is an important factor. It is not always, but sometimes may be controlling. The lapse of time may give such an opportunity for fabrication that the testimony cannot be received safely, or in a particular case it may itself

suggest the fact of fabrication. The circumstances were such that the trial court could well enough find that there was no probability of fabrication, that the statements were made at a time when, through intense suffering and nervous excitement, the reflective faculties of the decedent were not operative in his own interest, and that they were naturally illustrative of the accident and not designed to help his cause We cannot say that the court erred in receiving them. A review of the cases is not worth the while. They are considered in the treatises. 3 Wigmore, Ev. §§ 1745-1757; 2 Jones, Ev. § 344, et seq; 4 Chamberlayne, Ev. § 2982, et seq.

Order affirmed.