# MARGUERITE CLARK, AS ADMINISTRATRIX, ETC. v. JOHN C. DAVIS, AS AGENT OF THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

September 22, 1922.

No. 22,899.

**Res gestae—declarations of injured man admissible.**
1. Deceased was severely injured in a railway accident. The evidence sufficiently established the fact that he made statement to his sister and mother after coming from under the influence of ether in which he stated the manner in which he was hurt.

**Declarations after surgical operation admissible.**
2. These statements were properly received in evidence as part of the res gestae. Deceased had his left leg and right arm severely crushed. He was immediately taken some distance to a hospital. There is evidence that he was in extreme agony. There is evidence that the operation was performed three-quarters of an hour after the accident and that he was unconscious until about the time of making the statement. The trial court could properly hold that the accident and the operation furnished the startling occurrence calculated to produce the nervous excitement and spontaneous utterance necessary as a basis for such evidence and that the statements were made while the nervous excitement was supposed to dominate and before time for reflection, calculation or deliberate misrepresentations.

**Refusal of new trial because of new evidence correct.**
3. There was no error in refusing a new trial on the ground of surprise or newly discovered evidence.

**Verdict not excessive.**
4. The damages are not excessive.

Action in the district court for Pine county by the administratrix of the estate of Charles Almon Clark, deceased, to recover $65,000 for the death of her intestate. The answer alleged that the conditions attendant upon his work were patent and observable and that

[1]Reported in 190 N. W. 45.

deceased appreciated the result of being injured in the manner in which it is alleged the accident occurred. The case was tried before Searles, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $28,815. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Denegre, McDermott, Stearns & Weeks,* for appellant.

*Tom Davis & Ernest A. Michel* and *Otto Sobotka,* for respondent.

HALLAM, J.

On July 19, 1919, Charles Almon Clark was switchman in the employ of defendant in the railroad yards at Aurora, Illinois. At about 5:15 in the afternoon of that day he was injured so that he died in the early morning of July 22. Plaintiff had a verdict. Defendant appeals.

1. No question is made that the evidence as it stands is sufficient to sustain the verdict. Question is raised as to the admissibility of certain evidence. No one saw the accident. A fellow switchman, George Stopps, was the first to see deceased after the accident. Deceased was then sitting on the ground. His left leg and his right arm were crushed. Stopps took him in charge, notified other employes and an ambulance was called. Stopps remained with deceased until the ambulance arrived and went with him to the hospital. There ether was administered and an operation was performed. The left leg was amputated and broken bones of the right arm set. Stopps then called by phone, first the sister, and then the mother of deceased, and left a message for his wife. All came to the hospital, sister arriving first, mother next, and wife last. As to the time when these events happened, the witnesses do not agree. One witness said the operation commenced at 6 o'clock, another said at 6 or 7 o'clock. One said the operation took 30 minutes, another said 45 minutes. The hospital record shows that deceased returned to his hospital room at 7 p. m. Plaintiff's doctor, Rogers, said deceased was under the anaesthetic 45 minutes. Defendant's doctor said deceased was completely out of the ether when he called at 9:30.

A nurse said he could not talk intelligently until 11 p. m. Dr. Rogers testified that, when he called at 8 p. m. or shortly after, deceased had had an administration of morphine to relieve pain. His mother and sister claimed to have talked with him before 7.

The evidence excepted to is as follows:

The sister testified that she arrived at the hospital at 6:30. She was permitted to testify that when she entered the room this conversation followed. "He said to me 'Hello, Etc.' He said 'My leg is gone. Does Ma know it?' I said, 'No, brother, but thank God you are with us.' He said, 'They got me. They got me from the top. The brake gave way and let me down.'" The mother was permitted to give evidence of a similar conversation on her arrival a few minutes later.

Between the time of the accident and the arrival at the hospital deceased talked with Stopps. He gave Stopps messages to take to his wife and confided to him several little family secrets, but gave no explanation of the cause of the accident. Stopps testified that he asked deceased how it happened, but received no answer. He admitted, though, that at the coroner's inquest he had said he would not say whether he asked him. Stopps testified that deceased did not appear to be suffering pain. Another testified, however, that on arrival at the hospital he was moaning a great deal and seemed to be in extreme agony and the sister testified that when he talked to her he was groaning and moaning and rolling around on the bed.

Defendant urgently contends that it was error to receive this testimony of the sister and mother of deceased. This testimony is of the utmost importance in the case, for without it there is very little to indicate how the accident occurred.

It is first contended that the testimony could not be true. It is argued that if deceased wanted to tell any one he would have told his friend and fellow workman, Stopps, who was the first to talk with him after the accident. It is further urged that deceased could not have been conscious at the time his sister and mother claimed to have talked with him. Both arguments could be urged with some persuasive force before triers of facts. But we cannot accept them as conclusive against the positive statements of the mother and

sister. The fact that he did not tell Stopps does not prove intentional reticence. He had other grievous things on his mind.

As to the possibility of being conscious as his mother and sister said, we must bear in mind that people are easily mistaken as to exact time of past events. The narrative of facts we have given shows that this case is an example and that there are discrepancies even among defendant's witnesses. The fact is undisputed that neither sister nor mother were advised of the accident until after the operation was performed and after such notification they were obliged to make the trip by street car to the hospital. It is well known that a person comes from under the influence of ether gradually. It is quite conceivable that deceased may have sufficiently recovered consciousness to make the statements testified to on their arrival, particularly if the testimony of Dr. Rogers that deceased was under the anaesthetic about 45 minutes is true. The fact also testified by Dr. Rogers that, when he arrived at 8 or shortly after, morphine had been administered to relieve pain, may account for the testimony of the nurse and of Dr. Brennecke that he was unconscious until later in the evening, for the morphine was apparently administered upon revival of the pain after the sedative effects of the ether had passed away.

The story as to the language deceased addressed to his sister is natural and has the earmarks of truth. The jury doubtless found that the statements were made and we feel bound to accept their conclusion.

2. Whether the statements were admissible is a more difficult question. If they were plain hearsay, of course they were not admissible. They could only be received by exception to the hearsay rule as part of the res gestae. The question whether statements are to be received as part of the res gestae is often difficult to determine. The principles are well settled, but their application is difficult. There is a large element of discretion in the trial court. Such statements are received, if at all, on much the same principle as we receive exclamations of pain. To be received there must be some startling occurrences calculated to produce nervous excitement and spontaneous utterances. The utterances must spring out of the

transaction, must be spontaneous, generated by an excited feeling which extends without break or let down from the moment of the event to the moment of the utterance, and under such circumstances as to reasonably preclude the idea of calculation of deliberate design. What the law distrusts is "not after-speech but after-thought."

Travelers Ins. Co. v. Sheppard, 85 Ga. 751, 775, 12 S. E. 18, 26.

There is no arbitrary time line. The utterance must simply have been made before there has been time, or rather opportunity, to contrive and misrepresent, before the exciting influence of the act has become dissipated, "while the nervous excitement may be supposed still to dominate and the reflective power to be yet in abeyance." 3 Wigmore, Ev. § 1750; Mitchum v. State, 11 Ga. 615, 626; Carr v. State, 43 Ark. 99, 104; Kennedy v. Rochester City & B. Ry. Co. 130 N. Y. 654, 656, 29 N. E. 141; see also O'Connor v. Chicago, M. & St. P. Ry. Co. 27 Minn. 166, 6 N. W. 481, 38 Am. St. 288; State v. Alton, 105 Minn. 410, 117 N. W. 617, 15 Ann. Cas. 806; Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812; Meyer v. Travelers Ins. Co. 130 Minn. 242, 153 N. W. 523; Roach v. Great Northern Ry. Co. 133 Minn. 257, 158 N. W. 232.

Taking first the statement of the sister, we think it comes fairly within the rule. If her statement is true it was made well within two hours after the accident. But this time is not so important as the circumstances. The time between the accident and the operation was very short, not over three quarters of an hour, part of the time on a grain door transported on a way car, part of the time in an ambulance or in the hospital about to submit to a major operation with a crushed arm and leg, and, as one witness said, "in extreme agony," and most of the remaining time under the influence of ether. This statement, if made, must have been made about as he regained consciousness. It seems to us that the trial court might properly hold that the accident and the almost immediate operation furnished the necessary "startling occurrence" calculated to produce nervous excitement and spontaneous utterance, and that the statement was made while the nervous excitement may be supposed

still to dominate and before the arrival of time for reflection, calculation or deliberate misrepresentation.

The propriety of receiving the testimony of the mother as to the statement made to her perhaps half an hour later is more doubtful. It is of the same import as the testimony of the daughter. The language as repeated by her was "Mother, they have got me this time. I was on the top of the car with the intent of setting my brake and my brake gave way and throwed me to the ground and the cars went over my limbs." This evidence was merely cumulative. With some hesitation we hold its reception was not error.

3. Defendant asks a new trial on the ground of surprise at the introduction of this evidence and of newly discovered evidence. We think the showing made is insufficient to warrant us in overruling the trial court on this point. In fact there is an affidavit to the effect that defendant's counsel were advised before trial that evidence similar to this would be given by these witnesses.

4. It is contended that the damages are excessive. The verdict was for $28,815. Deceased was 34 years old, earning about $150 a month. He left a wife, a son a year old and a daughter born after his death. There may be recovery for pain suffered by deceased for the 58 hours he lived. St. Louis, I. M. & So. Ry. Co. v. Craft, 237 U. S. 648, 35 Sup. Ct. 704, 59 L. ed. 1160. In that case a recovery of $5,000 for suffering for one half hour was sustained below, held not reviewable in supreme court.

In Louisville & N. R. Co. v. Holloway, 246 U. S. 525, 38 Sup. Ct. 379, 62 L. ed. 867, a verdict of $25,000 in a death case was sustained below (168 Ky. 262). The award of damages was held not reviewable in the supreme court on appeal. The deceased was 34 years old, was earning $200 a month and left a widow but no children.

A majority of the court are of the opinion that the award of damages in this case should not be disturbed.

Affirmed.

DIBELL, J. (dissenting.)

I dissent. On my understanding of the evidence what the deceased said to his sister and mother was not admissible as res gestae. It is unlikely that the conversations were had as soon after the accident as is claimed; but granting that they were, what the decedent said, as I understand the evidence, was narrative and lacked the essential element of spontaneity that makes self-favoring statements admissible as res gestae. Our decisions are in harmony with the view expressed by Dean Wigmore to the effect that the question of admissibility is largely for the trial court in the exercise of a sound discretion and that time, though important, is not an arbitrary or always determining limit. Wigmore, Ev. § 1745, et seq. Still, the hearsay statements must be characterized by spontaneity arising from the transaction and accrediting them, and they must attend and illustrate the main fact under investigation.

In Roach v. Great Northern Ry. Co. 133 Minn. 257, 158 N. W. 232, the conversation was within 30 minutes or "perhaps considerably earlier" after the accident. The decedent in that case had one conversation within 5 minutes and this was conceded to be admissible. He closed it with the remark: "Don't ask me any more but go and get me a doctor." He was suffering intense pain, and was crying for relief. The case of Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812, involved the typical spontaneous exclamation immediately attendant upon the transaction which it explained. In Meyer v. Travelers Ins. Co. 130 Minn. 242, 153 N. W. 523, the statement held admissible was made within 2 or 3 minutes after the shooting which was the subject of investigation. In Hyvonen v. Hector Iron Co. 103 Minn. 331, 115 N. W. 167, 123 Am. St. 332, the declaration was within 20 or 25 minutes after the accident, within 5 minutes after the result of it became known, in the presence of its visible effects, amid some excitement, and it was against the interest of the declarant for it constituted a confession of his fault.

If Stopps, the decedent's fellow trainman, is believed, the decedent asked him to notify his family, confided to him some messages to his wife, told him what doctors he wanted, and asked that Dr. Rogers assist. At the hospital he consulted with Dr. Rogers, and,

using the doctor's words, "told me he wanted me there to see if it was necessary for his leg to be amputated." The statements of the decedent to his sister and his mother were narrative in form and in fact. The decedent was giving an account of a past transaction. Of course they were of probative effect as are hearsay statements generally.

The rule now adopted may work well enough, in some respects may be thought to be the better rule, but it departs from the requirement that spontaneity accompany hearsay to make it res gestae, and puts the self-serving statements of a deceased declarant, when it is thought by the court that he is likely telling the truth about an event that has passed, upon a footing much like those of a deceased declarant admitted when against his interest. Looking at the evidence from a viewpoint liberal to the plaintiff the testimony does not meet the tests of res gestae.

The award of damages is large but I am content to accept the view of the trial court that there should not be a reduction.

HOLT, J. (dissenting.)
I concur in the above dissent.