JOHN W. PERRY, ADMINISTRATOR, *vs.* TASSOS G.
HARITOS.

Third Judicial District, New Haven, January Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and WEBB, Js.

A pedestrian has the right to cross a street in front of an approaching
motortruck, provided the truck is so far away and other circum-
stances are such as to afford him reasonable ground for believing
that he can do this in safety if both he and the driver of the truck
act with reasonable regard for the rights of each other.

A slight, trivial deviation in the route customarily followed by a servant
in the execution of his master's business, will not exonerate the
master from responsibility for the servant's negligence while so
deviating, and the trial court may so rule as matter of law. So,
too, where the deviation is very marked and unusual the court
may rule, as matter of law, that such deviation constitutes a de-
parture from the employment and does relieve the master of lia-
bility. But cases lying between these extremes will be held to
present questions of fact and not of law.

The evidence in the present case reviewed and the question of whether,
at the time of the accident, the servant was acting in the course of
his employment and was negligent, and whether the plaintiff's
intestate was free from contributory negligence, *held* to be questions
of fact for the determination of the jury.

A verdict should not be directed where more than one conclusion is
reasonably open to the jury upon the evidence before them.

A declaration following some startling occurrence and made with ref-
erence to it by one having an opportunity to observe the matter
of which he speaks, and in such close connection to the event and
under such circumstances as to negative the opportunity for de-
liberation and fabrication and to indicate that it was a spontaneous
utterance growing out of the nervous excitement and mental and
physical condition of the declarant, will be admitted in evidence
because the spontaneity of the utterance is the guaranty of its
trustworthiness. This exception to the hearsay rule rests upon
the common experience that utterances so made are void of self-
interest and are in the same category as exclamations of pain.

The relation of the utterance in point of time to the occurrence, while
an important element to be considered in determining whether
there has been opportunity for reflection, is not decisive. The
circumstances and manner of the accident, the mental and physical
condition of the declarant, the shock produced, the nature of the

Perry *v.* Haritos.

utterance, whether against the interest of the declarant or not, or
made in response to question, or involuntary, and any other ma-
terial facts in the surrounding circumstances, are to be weighed in
ascertaining the basic conclusion whether the utterance was spon-
taneous and unreflective and made under such circumstances as
to indicate absence of opportunity for contrivance and misrepresen-
tation.

Before admitting such an utterance or declaration, the trial judge must
decide the preliminary question and determine that the declarant
had no opportunity for deliberation and reflection and that the
utterance was spontaneous; and his decision of that question, in
the exercise of his discretion, will not be reversed unless it be found
unreasonable.

The defendant's motortruck used in the delivery of milk, while driven
by his servant at high speed in the early morning, hit the plaintiff's
intestate as he was crossing the street, carried him along on the
radiator for seventy feet or more, when he lost his hold, fell under
the car which tossed his body into the air causing it to fall face
downward, and the car then continued forty feet before it was
stopped. Thereupon the driver jumped off and immediately said
to a policeman: "Arrest me, officer. It is my fault." *Held* that
this utterance, under the circumstances detailed, was admissible
as a spontaneous, impulsive declaration evidential of the fact to
which it referred.

Argued January 24th—decided March 1st, 1924.

ACTION to recover damages for causing the death of
the plaintiff's intestate by negligence, brought to the
Superior Court in New Haven County and tried to the
jury before *Hinman, J.;* the court directed a verdict
for the defendant, and from the judgment thereon the
plaintiff appealed. *Error and new trial ordered.*

The jury might reasonably have found these facts:
The defendant owned and operated a wholesale and
retail dairy business in New Haven, and had in his
employ on one of his milk routes one Lester Hawley,
whose employment required him on June 9th, 1922, to
distribute between 1 and 8 a. m. five hundred quarts
of milk and cream from defendant's auto-truck which
he drove. On this day he had by 5 a. m. delivered
about half of the five hundred quarts and had the rest

to deliver.   While engaged in his work he saw about 5 a. m. a Mrs. Strazynsky carrying several bundles and apparently waiting for a trolley-car; he asked her how far she was going and on being told Poplar Street, said: "Jump in if you want to.   I am going that way too." Mrs. Strazynsky then boarded the truck and sat in the front seat with Hawley, and he drove down Grand Avenue as far as Wallace Street without making a stop.   The defendant had a customer on Grand Avenue, a number of blocks below Wallace Street and not far from Poplar Street, and at the time of the accident Hawley was on his way to deliver milk to this customer. A trolley-car approached on Grand Avenue from the west and stopped just before reaching the intersection of Grand Avenue and Wallace Street.   The decedent, John Perry, Sr., alighted from this car after it had stopped, walked to the northeast curb at the intersection of these streets in front of the crosswalk on Grand Avenue, and when the trolley-car had moved out of the way stepped upon the crosswalk and walked upon it across Grand Avenue which was forty feet wide, at a speed of three miles an hour.   Whether Perry looked to the east when he stepped from the curb, from which direction Hawley was approaching, did not appear. When Perry had gone thirty-one feet the truck Hawley was driving struck him and carried him seventy-two feet, and it proceeded forty-one feet further before it was stopped.   When Perry stepped off the northeast curb to cross Grand Avenue, the truck Hawley was driving was distant four hundred and fifty feet.   It was then traveling very rapidly and continued so to travel until it struck Perry, and Hawley was not keeping a reasonable outlook for travelers and did not have his car under reasonable control.   The accident was due to the excessive speed the truck was traveling, to the failure of Hawley to keep a reasonable lookout and to

have the truck under reasonable control, and to operate it with reasonable care.

*Joseph V. Esposito,* with whom was *William J. Mc-Kenna,* for the appellant (plaintiff).

*Raymond E. Baldwin,* with whom was *Philip Pond,* for the appellee (defendant).

WHEELER, C. J.   The direction of the verdict and a single ruling upon evidence, are the questions we are asked to review upon this appeal.   The court directed the verdict upon two grounds: (1) that the plaintiff had failed to prove that the decedent Perry was free from contributory negligence, and (2) that Hawley, the driver of this truck, was not at the time of this accident in the execution of the defendant's business within the scope of his employment.   The right of the jury to find negligence upon the part of this driver as a proximate cause of this accident, is conceded by the defendant's counsel, so that consideration of the direction of the verdict may be confined to the two grounds upon which the trial judge rested his ruling.

The defendant's claim of contributory negligence on the part of Perry is based upon his having stepped from the curb to the crosswalk and thence proceeded across the street, without having looked to the east where he could have seen this truck approaching at a rapid rate and have stopped to let it pass.   When he stepped from the curb, the jury might have found the truck was some four hundred and fifty feet distant.   Had he looked and seen the truck at this distance, he might reasonably have concluded that he could pass over this street, forty feet in width, before the truck, if operated reasonably, would reach this crosswalk.   Whether in view of the limited traffic on the street at this hour, the fact

that this was a crosswalk, that a trolley-car had just stopped at this point and Perry had just alighted therefrom, and that no vehicle was within such distance of the crosswalk as to render it unsafe to pass over the crosswalk had the truck been operated with reasonable care,—the jury might reasonably have found Perry's conduct not to have been negligent and a proximate cause of this accident, was a question of fact for the jury and not of law for the court. Its decision involved the application to this situation of the conduct of the ordinarily prudent man in a similar situation; and since the decision was one concerning which reasoning minds could reasonably differ, it presented a question of fact for the trier and not one of law for the court. As JUDGE HALL says in *O'Connor* v. *Connecticut Ry. & Ltg. Co.*, 82 Conn. 170, 173, 72 Atl. 934: "Due care by one about to cross a street-railway track does not always require him to first look for an approaching car. The question of due care in such situations depends upon the circumstances of each case." The point involved is that discussed in *Woodhull* v. *Connecticut Co.*, 100 Conn. 361, 124 Atl. 42, to which reference may be made without further discussion.

The question whether Hawley was engaged in the defendant's business and acting within the scope of his employment, was also upon the evidence one of fact for the jury. In view of the fact that Hawley was driving his master's truck loaded with milk which he had just before been distributing in the course of his employment, and in view of the fact that the jury had a right to infer from the testimony of Wade and Kipp that he had a customer on Grand Avenue beyond the point of the accident, they might reasonably have found that he was at the time of the accident in the course of his employment. The fact that he had, contrary to his orders, taken the woman in his truck to carry her along

the way she and he were going, had no relation to the question whether he was at the time of the accident in the course of his employment. If this conclusion were one which the jury ought not to make, the circumstances, in no view of the evidence, would enable us to hold, as matter of law, that Hawley was not at the time of the accident engaged in the defendant's business and acting within his employment. The trial court held otherwise, upon the theory that Hawley had so departed from the defendant's business as to have abandoned it.

Assuming that Hawley intended, at the time he took the woman in the truck, to deviate from his employment until after he had left the woman at her home, we could not hold, as matter of law, that this deviation was so great as to compel the determination that the servant was not on the master's business. The deviation in this case would have been in distance about thirteen city blocks, and, in the time required to cover it, to be measured by the speed of ordinary motortruck traffic on a city street of these surroundings. We could not, under the rule governing such a case, hold this to be a "very marked and unusual" deviation, thus permitting us to hold as matter of law that Hawley was not on his master's business, but had departed from it and was on his own. Our rule upon this subject is laid down in our leading case of *Ritchie* v. *Waller*, 63 Conn. 155, 161, 28 Atl. 29, with such clearness as to be of especial value in guiding trial courts, and with as much definiteness as the subject will admit of: "Whether then the act of a servant, for which it is sought in a particular case to hold the master responsible, was done in the execution of the master's business within the scope of the employment or not, must from the nature of things in most cases be a question of fact to be determined as such by the jury or other

trier, because no general rule of law has been or probably can be laid down the application of which will determine the matter in all cases. . . . In cases where the deviation is slight and not unusual, the court may, and often will, as matter of law, determine that the servant was still executing his master's business. So too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions." *McKiernan* v. *Lehmaier*, 85 Conn. 111, 114, 81 Atl. 969; *Schrayer* v. *Bishop*, 92 Conn. 677, 680, 104 Atl. 349; *Stuart* v. *Doyle*, 95 Conn. 732, 739, 112 Atl. 636; *Shea* v. *Hemming*, 97 Conn. 149, 152, 115 Atl. 686; *Carrier* v. *Donovan*, 88 Conn. 37, 40, 89 Atl. 894.

The direction of the verdict in this case conflicted with our rule governing the trial court in its direction of a verdict. "When the reasoning mind could not reasonably reach another conclusion, the judge should direct a verdict, otherwise he should refuse to direct. The same end can be reached by setting aside the verdict after the plaintiff has been accorded a full trial of his cause." *Ulrich* v. *New York, N. H. & H. R. Co.*, 98 Conn. 567, 570, 119 Atl. 890.

Error is assigned in the exclusion of the testimony of Officer McMullen. Upon the trial McMullen testified that immediately after the truck stopped, Hawley and Mrs. Strazynsky jumped off the truck and the plaintiff offered to prove that Hawley then said to McMullen: "Arrest me, officer. It is my fault," and claimed its admissibility as a spontaneous declaration which was contemporaneous with and a part of the accident. The court sustained defendant's objection and excluded the offer.

The declaration of the driver of the truck followed immediately after the truck had stopped, it having struck Perry, carried him on the radiator seventy-two feet, when he lost his hold upon the radiator and fell under the car, which threw his body in the air causing it to fall face downward, and the car proceeded for forty-one feet before it was stopped. The accident was a most terrible one, and calculated to shock the driver and to throw him into a condition of nervous excitement. This utterance was made in such close proximity to the accident as to be almost a part of it and contemporaneous with it. We have, as a rule, made the element of time the decisive factor in determining whether a declaration was a part of an act; if it was contemporaneous we have held it admissible, and if not, inadmissible. *Morse* v. *Consolidated Ry. Co.*, 81 Conn. 395, 71 Atl. 553, and *McCarrick* v. *Kealy*, 70 Conn. 642, 40 Atl. 603, were decided under this rule. The exclusion of this offer was undoubtedly made under the authority of these and other decisions, and without reference to the exception of spontaneity upon which counsel claimed it. This exception to the hearsay rule has been adopted by a number of courts and jurists, largely under the influence of Wigmore's exposition of the subject. In Wigmore on Ev. (2d Ed.) Vol. 3, § 1747, it is said: "This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced . . . by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy, . . . and thus as expressing the real tenor of the speaker's belief as to the

facts just observed by him; and may therefore be received as testimony to those facts." The courts which have adopted this exception to the hearsay rule follow closely Wigmore's exposition, and neither they nor jurists who have written upon this subject have been able to add anything, of consequence, to this exposition, but their reiteration has tended to clarify it. When the declaration follows some startling occurrence and is made with reference to it by one having an opportunity to observe the matter of which he speaks, and in such close connection to the event and under such circumstances as to negative the opportunity for deliberation and fabrication and to indicate that it was a spontaneous utterance growing out of the nervous excitement and mental and physical condition of the declarant, it is reasonably probable that it is trustworthy. The spontaneity of the utterance is the guaranty of its trustworthiness. If the utterance does not relate to the accident or occurrence, or the declarant has had no opportunity to observe that of which he speaks, it cannot fall within this principle. The relation of the utterance in point of time to the accident or occurrence, while an important element to be considered in determining whether there has been opportunity for reflection, is not decisive. The element of time, the circumstances and manner of the accident, the mental and physical condition of the declarant, the shock produced, the nature of the utterance, whether against the interest of the declarant or not, or made in response to question, or involuntary, and any other material facts in the surrounding circumstances, are to be weighed in ascertaining the basic conclusion whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation. The principle rests upon the

common experience that utterances made under such circumstances are void of self-interest and are in the same category as exclamations of pain. The probability of falsehood is so remote as to be negligible. Before admitting such utterance, the trial judge must decide the preliminary question, and determine that the declarant has had no opportunity for deliberation and reflection and that the utterance was a spontaneous one. His decision upon such a preliminary question will be left to his discretion, unreviewable by us, unless his conclusion be found to have been an unreasonable exercise of discretion. Among authorities supporting this principle, we cite: *Clark* v. *Davis*, 153 Minn. 143, 190 N. W. 45, 46; *Eby* v. *Travelers Ins. Co.*, 258 Pa. St. 525, 102 Atl. 209; *Starcher* v. *South Penn Oil Co.*, 81 W. Va. 587, 95 S. E. 28, 33; *Washington-Virginia Ry. Co.* v. *Deahl*, 126 Va. 141, 100 S. E. 840, 842; *Roach* v. *Great Northern Ry. Co.*, 133 Minn. 257, 259, 158 N. W. 232; *Meyer* v. *Travelers Ins. Co.*, 130 Minn. 242, 244, 153 N. W. 523; *Lambrecht* v. *Schreyer*, 129 Minn. 271, 275, 152 N. W. 645; *Mitchum* v. *State of Georgia*, 11 Ga. 615, 627; *Carr* v. *State of Arkansas*, 43 Ark. (9 Turner) 99, 104; Chamberlayne on Evidence, Vol. 4, § 3006. "Utterances admissible as *res gestæ*," Prof. Morgan, 31 Yale Law Journal, 229, 238; 22 Corpus Juris, p. 461 *et seq.;* note, Harvard Law Review, Vol. 31, p. 801, and cases cited. The exclusion of this offer was erroneous.

There is error and a new trial is ordered.

In this opinion the other judges concurred.