## STATE v. JUE MING.[1]

April 25, 1930.

No. 27,803.

[1]Reported in 230 N. W. 639.

222

*A. M. Cary, H. C. Bellew, Mark J. McCabe* and *Philip Bessler,* for appellant.

*Henry N. Benson,* Attorney General, *Floyd B. Olson,* County Attorney, and *William C. Larson,* Assistant County Attorney, for the state.

OLSEN, C.

Defendant was convicted of murder in the first degree and appeals from the judgment.

Hum Mon King, a Chinese operating a small laundry in Minneapolis, was shot and fatally wounded at the front door of the laundry, at about 11 o'clock in the evening of February 7, 1929, and died from such wounds on February 9. Defendant had visited him there between seven and eight o'clock the same evening and had sold him a lottery ticket or number. He had known King about two years and claims to have visited him a number of times and to have been on friendly terms with him. Defendant and two other men, living at a lodging house some distance away, at about 11 o'clock that evening entered an automobile hired by one of them and standing in front of the lodging house. They then drove to a place near King's laundry. Defendant and one of the men left the car and went to the door of the laundry. Defendant rapped and spoke to King through the closed door. King had come to the door from his living quarters in the rear of the laundry room and was not dressed. He returned to the room where his wife was, put on some clothes, then came back and opened the door. Immediately thereafter two or three shots were fired. There was a struggle or

scuffling at the door, and King returned to the room where his wife was. He was wounded and bleeding and carried in his hand a revolver, which he had wrested from one of the assailants. The two men at the door hastened back to the car and entered it, one some distance ahead of the other. The car started before the second man reached it. He jumped upon the running board and entered the car while it was in motion. The car then sped away.

■ Two police officers arrived at the place some 20 or 30 minutes after the shooting. The wounded man was then in bed and suffering from his wounds. He had written some words in Chinese on a piece of paper which he handed to the officers and told them to keep. He also handed them the gun. When asked by the officers who had shot him or if he knew who had shot him, he answered: "Jue Ming shot me and I got the gun" or "Jue Ming he shoot me" and that it was with this gun. He also gave the officers information as to where Jue Ming was employed. The paper writing as translated contained a reference to a "tong" and the words "Jue Ming hit me" and some character which the interpreter could not translate.

Defendant claims it was error to receive the testimony of the police officers and Mrs. King as to the statements so made by the wounded man, and the testimony of the interpreter as to what was contained in the paper writing. The evidence so received comes well within the res gestae rule. The discretion of the trial court in receiving such evidence, while not unlimited and subject to review, was not here abused. State v. Alton, 105 Minn. 410, 117 N. W. 617, 15 Ann. Cas. 806; State v. Ingraham, 118 Minn. 13, 136 N. W. 258; Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812; Roach v. G. N. Ry. Co. 133 Minn. 257, 158 N. W. 232; Perkins v. G. N. Ry. Co. 152 Minn. 226, 188 N. W. 564; Clark v. Davis, 153 Minn. 143, 190 N. W. 45; Linderoth v. Kieffer, 162 Minn. 440, 203 N. W. 415; State v. Gandel, 173 Minn. 305, 217 N. W. 120.

■ The wounded man was taken to a hospital. The police officers found the car used by the men concerned in the shooting in front of the lodging house mentioned. In a room in that house they found the defendant and two other Chinese. They took these

three men to the hospital bed where King was then lying and asked him if he knew the men or any of them. King raised up in bed, pointed his finger at defendant and said: "Jue Ming, you shoot me." Error is assigned on the reception of evidence, given by the police officers, of this statement. This was about three hours after the shooting. The wounded man had been suffering severely and continuously since he was shot, so much so that at times he was in a dazed condition. He had been transported from his home to the hospital. The reasonable inference is that he was laboring under excitement, strain and pain continuously up to and at the time the statement was made at the hospital. It is not so much a question of time as a question of the condition of the person and the situation and circumstances surrounding him which determines whether or not a statement made is part of the res gestae. The time of course may be so long that it becomes decisive. But the statement made at the hospital was the same as the repeated statements made at the house immediately following the shooting. Those statements had been clearly testified to by three credible witnesses and stood unopposed. They were part of the res gestae. Leaving out the statement made at the hospital, the jury must nevertheless have found that the decedent stated that Jue Ming shot him. Under those circumstances it cannot be held that any prejudice resulted, and there was no prejudicial error in receiving and refusing to strike out what decedent said at the hospital. Whether the statement made at the hospital could be held to be part of the res gestae we need not here determine.

■ Statements of the prosecuting attorney in his closing remarks to the jury are assigned as error. The case is one where the defendant's admitted actions and the circumstances shown justified a wide range of argument. We have examined all statements objected to and find nothing so far objectionable as to justify a reversal on that ground.

■ It is urged that the court should have instructed the jury that the statement made by King at the hospital was not evidence of the facts therein stated but was admitted only on the theory

that the defendant's failure, if any, to reply thereto might be considered as an admission by defendant. What has already been said about this statement disposes of this objection.

■ The other assignments of error go to the sufficiency of the evidence to sustain the conviction. We need not go into detail as to the evidence. This may be added to what has been stated: At the time of the shooting two men happened to be on the street not far from the laundry. They heard the shots, saw three men struggling or fighting at the door, saw the two men run back to the car, saw the car start up and speed away, and were able to give the police a description of the car, and one of them to get and give to the police the license number. These two men hastened to the laundry, found King there, bloody and wounded, and rendered such assistance as they could give. From the information given by them the officers were able to locate the car in front of the lodging house where defendant lived and there to find him. Defendant was asked where he had been that evening and answered that he had been out riding in an automobile, just riding around with some friends. His overcoat was examined and found to have a cut in one sleeve. He was asked how he got the cut and answered that he tore it on a nail in the basement. In his own testimony he admits that the cut in the coat sleeve was from a bullet fired in the scuffle at the time of the shooting. The substance of his testimony is that he was on friendly terms with King and had visited him many times; that at about 11 o'clock on the evening of the shooting one Yuen, who had been staying at the same lodging house and who claimed to be from Chicago, said he had some business to transact with King and asked defendant to accompany him to see King. Defendant had but slight acquaintance with Yuen but agreed to go with him. They then met one Sing, who had a hired automobile standing in front of the lodging house, and asked him to drive them to King's laundry. The three then entered the car and drove to the laundry. The car was backed up around the corner near the laundry. Defendant and Yuen then left the car and went to the door of the laundry. Defendant rapped on the door and, on inquiry

by King through the closed door as to who was there, gave his name. King left the door for a few moments, then came back and opened it. Yuen then commenced to shoot at King, and a struggle took place between them. Defendant made some effort to part them. They were on the outer side and in front of him so that he could not get away for a time. He then ran back to the car and was followed by Yuen and they drove away, as stated.

We have this picture: Three men, at 11 o'clock at night, drive in an automobile to the place of residence of another, park the car around the corner near-by so as to be convenient for getting away and yet not conspicuous, leave one man at the wheel of the car ready to operate it, two of them then go to the door and call to the person within to open it, one of them then shoots the person coming to the door, and the three men then flee from the scene. The undisputed facts are so persuasive of guilt that the jury could not reasonably have found otherwise. That a cap lost in the struggle was identified by defendant and the landlady of the lodging house as belonging to Yuen is not of great importance.

The evidence very amply sustains the conviction. The defendant had a fair trial. The court submitted the case to the jury in a clear charge to which no exception is taken, and the verdict and judgment must stand.

Judgment affirmed.

