RAYMOND G. NOESEN v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

January 6, 1939.

No. 31,829.

[1]Reported in 283 N. W. 246.

234

*John E. Palmer* and *E. R. Selnes,* for appellant.

*Davis, Michel, Yaeger & McGinley* and *Frank Zima,* for respondent.

HOLT, JUSTICE.

After verdict for plaintiff, defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action is for the wrongful death of plaintiff's decedent, Fred A. Ohlrich, and also a second count for damages for Ohlrich's conscious pain suffered from the time the mortal injury was received until released by death. The action was based on the federal employers liability act (45 U. S. C. §§ 51 to 59, 45 USCA, §§ 51 to 59). The short facts are: In the forenoon of January 28, 1937, three of defendant's employes were engaged in handling heavy railroad crossing frogs upon a gondola freight car at North Fond du Lac, Wisconsin. The car was destined for Minneapolis, this state. Ohlrich was the foreman, one Corbett was a helper, and one Hensen operated the crane by which the frogs were handled. The crane had a lifting boom about 40 feet long which could be raised and lowered and swung sideways by the operator Hensen, the motive power

being steam. The crane was on its own car. The gondola car stood upon a track running north and south, and against its south end the crane car was spotted. The frogs varied somewhat in form and weight, but were all heavy and of such irregular shape that in dragging one over the others the ends would drop into the interstices and thereby twist the lifting cable or chains and perhaps jerk the boom. In unloading the frogs to be left at Fond du Lac, the tongs were attached to the end of the steel cable and hooked onto the middle of the frog, thereby keeping it level. After the unloading it was deemed necessary to shift those remaining from one end of the car to the other, and this was sought to be accomplished by substituting a heavy chain for the hooks. Near the end of each leg of the frog there is a hole to attach the angle iron spiked to the tie. Through this hole a tie spike was inserted so that one-half thereof, or about three and a half inches, protruded on each side, and then the chain was wrapped around each end of the spike on both sides of the leg. Then, upon starting the cable, the chain tightened and the frog could be pulled as desired in the car. The chain had thus been fastened to a frog weighing 1,865 pounds which was being pulled toward the south end of the gondola car as the boom was raised. The frogs are in the form of an X, their length about 14 feet. When the end to which the chain was fastened was at the height of eight or ten feet, the chain in some way slipped out of the spike and the frog, in dropping, struck so that the frog end upon which Ohlrich stood sprung up, tossing him out of the gondola car, inflicting injuries from which he died in the evening.

This action was instituted charging defendant and its servants with various acts of negligence as the cause of Ohlrich's death, such as defective equipment and its reckless and careless management, thereby depriving his widow, dependent upon him, of support, to her damage in the sum of $25,000. A second cause of action was also stated averring the same acts of negligence as the cause of Ohlrich's injury and alleging that between the infliction thereof and death he endured conscious pain and suffering to his damage in the sum of $5,000. The answer admitted that Ohlrich was in defendant's employ as foreman, that he was engaged in interstate transporta-

tion work, and his injury and death therein, but averred that the equipment used was proper and that the injuries suffered were caused by Ohlrich's negligent handling of the equipment, and alleged his assumption of the risk. Both causes of action were submitted to the jury. There was a verdict for $8,500. From the order denying defendant's motion in the alternative for judgment notwithstanding the verdict or a new trial, it appeals.

The case went to the jury on the sole issue of the negligence of Hensen, the operator of the crane. The court charged that no negligence could be predicated upon defects in the equipment nor upon any negligent act or omission of Corbett, Ohlrich's helper. There are many assignments of error that need not be considered, for the conclusion is reached that there must be a new trial because of admission in evidence of the so-called *res gestae* statements of Ohlrich to his son Raymond. Raymond, a young man 23 years of age and single, testified that up to his father's death he lived at home, but supported himself, paying five dollars a week to his mother for room, board, and washing, continuing so to do for some time after his father's death. There is no allegation in the complaint of any surviving children. But one action is permissible by the personal representative of a decedent for this wrongful death under the federal act. None of the beneficiaries may maintain an action. Only for those alleged to be dependent upon Ohlrich for support was the jury permitted to award damages for his wrongful death upon proof of the amount each one might have received from him had he not been killed—that is, the damages are limited to the probable amount of pecuniary aid each would have received from Ohlrich had he continued in life. This cause of action accrued to the dependent widow and children at the time of Ohlrich's death. The complaint mentions the widow only. The two children were of age and witnesses at the trial. No attempt was made to prove that they were dependent or that either had sustained any pecuniary loss by the wrongful death. G. C. & S. F. Ry. Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57 L. ed. 785. We think it follows that as to the first cause of action Raymond was not barred by 2 Mason Minn. St. 1927, § 9817, from testifying to conversation with his

deceased father. He was neither a party to the suit nor pecuniarily or otherwise interested in the event thereof.

The objection went not only to the point that Raymond was a party interested in the event of the action, but that the testimony was not *res gestae,* was but a recital of past events, and conclusions of the declarant. Whether *res gestae* or not was primarily for the trial court, under our decisions. Clark v. Davis, 153 Minn. 143, 190 N. W. 45; 2 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 3300 and 3301. The ruling on that score should not be reversed. Pacific F. Ins. Co. v. Kenny Boiler & Mfg. Co. 201 Minn. 500, 277 N. W. 226, and others of the same import, are relied on for the claim that, even though *res gestae,* the testimony of Ohlrich's declarations should be rejected as recital of past events and as conclusions and of no value. This overlooks that Ohlrich had for years been the foreman in charge of this sort of work and was directing the rearrangement of these frogs in the gondola car. His declaration, set out below, was of more effect than that of a casual observer of the accident. Hensen was under his control, and his declaration that his signals to Hensen were ignored and the frog raised too fast may be regarded as a statement of fact by one in charge of the operation.

But, as to the second cause of action for conscious pain and suffering, we cannot escape the conclusion that the son Raymond had a pecuniary interest in the event thereof and hence there was error, to defendant's prejudice, in permitting him to testify to conversation with his deceased father. Under the amendment of the federal employers liability act (April 5, 1910—45 U. S. C., § 59, 45 USCA, § 59) it is provided:

"Any right of action given by this Act [chapter] to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents, and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."

The evidence shows that two sons survived, one being older than Raymond. Even though the personal representative made no alle-

gation in the complaint as to their existence, it is not possible to escape the conclusion that they may claim their˜share out of the recovery awarded for the conscious pain and suffering of their father from the injury until his death. That cause of action survived and passed to his personal representative in trust for the widow and children regardless of dependency, age, or number. The act is silent as to how it is to be divided between them. But certainly there is nothing that goes to show that the recovery for conscious pain and suffering is to be measured by the dependency of the widow or child upon the employe for support. It seems to us that any child, whether or not named in the pleading or in the proof, may claim of the personal representative his or her share in the amount recovered for conscious pain and suffering of the father under the provisions of the amendment April 5, 1910. In this case the jury was not required to state in the verdict the amount awarded upon each cause of action, as inferentially it might have been required to do. Kansas City Southern Ry. Co. v. Leslie, 238 U. S. 599, 35 S. Ct. 844, 59 L. ed. 1478. So it must be held that if vital evidence was erroneously admitted as to the second cause of action the verdict cannot stand. The amount awarded on the second cause of action may have been large. In St. L. I. M. & S. Ry. Co. v. Craft, 237 U. S. 648, 35 S. Ct. 704, 59 L. ed. 1160, the court sustained an award of $5,000. Outside of Raymond's testimony there is no substantial evidence of Hensen's negligence. Corbett's written statement obtained by one of plaintiff's attorneys shortly after the accident is of doubtful value in view of his testimony upon the witness stand that it was not true as to this: "And it appeared to me that the boom swung to one side and shook the frog loose from the chain," the only thing in this written statement from which it might be inferred that Hensen's acts had anything to do with the accident. 2 Wigmore, Evidence (2 ed.) § 1018, cases cited in note 3; Southern Ry. Co. v. Gray, 241 U. S. 333, 36 S. Ct. 558, 60 L. ed. 1030. The declarations of Ohlrich to his son which the latter was permitted to testify to over the objection that § 9817 barred the same were these: "Pa, what happened? My Pa said: 'Hensen pulled up the frog too fast. I gave him a signal to stop, but he put on too much

steam, and the boom swung around and jerked the chain loose and threw me out of the car.'" Defendant vigorously contends that even though admissible as *res gestae* the declarations should be rejected as recital of past events and as mere conclusions. But, as above stated, this contention must be disallowed, for Ohlrich's long experience as foreman and the one in charge of moving these frogs, whose signals Hensen was to obey, gave his opinion as to the cause of the accident more value than that of a casual observer or by-stander. We think there must be a new trial because of the error in receiving Raymond's testimony of his father's conversation, which vitiates the verdict as to the second cause of action.

In view of the fact that Raymond's testimony properly could not have been excluded as to the first cause of action by virtue of said § 9817, and that, with it in, there would be, in our opinion, sufficient evidence to go to the jury as to Hensen's negligence having caused Ohlrich's death, judgment notwithstanding the verdict should not now be granted. Of course, to support a recovery under the federal employers liability act there must be substantial evidence of the employer's or his servant's negligence. Atlantic Coast Line R. Co. v. Davis, 279 U. S. 34, 49 S. Ct. 210, 73 L. ed. 601; Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. ed. 819.

There are other assignments of error, but they relate to matters not likely to arise on another trial, with the possible exception of misconduct of plaintiff's counsel in the final argument to the jury. The argument for defendant is also in the record and contains nothing that could have provoked such intemperate utterances as are found in the address of plaintiff's attorney. Had the error not occurred for which a new trial is granted, we cannot see how we could escape granting a retrial because of the testimony or evidence adduced by the attorney in his argument, without having taken the witness stand and subjecting himself to cross-examination— evidence which he undoubtedly knew to be inadmissible.

The order is reversed and a new trial granted.