## JOHN SAYE v. THE STATE.

### No. 3648.　Decided January 23, 1907.

**1.—Murder—Negligent Homicide—Jury and Jury Law—Special Venire—Statutes Construed.**

Upon a trial for murder where the special venire for the term included 252 jurors from which 100 men had been drawn prior to the time the defendant's special venire was drawn, which said 100 names were not replaced in the box, but defendant's jury was drawn from the remaining 152 names, there was no error and the action of the court was authorized under article 647a, as amended by the Acts of the Twenty-ninth Legislature, pages 17 and 18.

**2.—Same—Evidence—General Reputation of Defendant.**

Wherever an issue is made which brings into controversy the character of the defendant, he is authorized to prove the same; and it was error upon a trial for negligent homicide, where the defense was against negligence, to reject testimony proving the general reputation of the defendant for being a cautious and prudent officer, where the testimony showed that the homicide occurred while the defendant as an officer was attempting a lawful arrest of the deceased.

**3.—Same—Evidence—Conspiracy—Declaration of Third Parties.**

Upon a trial for murder and negligent homicide where the testimony was not clear that there was a conspiracy between defendant and another, or that said

other party acted with the knowledge and consent of the defendant, in inducing deceased to arm himself and go out with said third party and they would shoot up the town in order that defendant might have the opportunity to arrest deceased, in the attempt of which arrest deceased was killed by defendant; it was error to permit the State to show that said third party was heard to say to the deceased on the night of the homicide to take said third party's pistol and go shoot up the town, etc., the defendant not being present.

### 4.—Same—Evidence—Intent—Self-Serving Declaration.

Upon a trial for murder and negligent homicide there was no error in refusing defendant to state what his feelings were after the homicide was committed and as a result thereof; and that he was very much grieved and surprised when he found the deceased was shot.

### 5.—Same—Charge of Court—Acts of Defendant—Negligence.

Where upon trial for murder the evidence developed a case of negligent homicide the court was authorized to submit this issue; and where the evidence showed that the deceased was carrying two pistols at the time he was shot by the defendant in attempting to arrest him, there was no error to charge upon that phase of the case, and upon defendant's manner of firing his pistol, but the court should have informed the jury that there must have been apparent danger causing the death of deceased in the defendant's act of handling his pistol, in order to justify a conviction.

### 6.—Accomplice—Charge of Court.

Where upon trial for murder and negligent homicide it developed that a State's witness was evidently an accomplice, the court should have charged on the law of accomplice testimony.

Appeal from the District Court of Collin. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of negligent homicide; penalty, a fine of $1,000.

The opinion states the case.

*Wallace Hughston, G. R. Smith* and *M. H. Garnett,* for appellant. —On question of negligent homicide: Gorden v. State, 14 Texas Ct. Rep., 593; Austin v. Cameron, 83 Texas, 351; Anderson v. State, 27 Texas Crim. App., 181. On question of general reputation: People v. Ashe, 44 Cal., 288; Edgington v. U. S., 164 U. S., 361; 1 Wharton Crim. Law, 7th ed., sec. 644, and authorities cited in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of negligent homicide, and his punishment assessed at a fine of $1,000; and prosecutes this appeal.

The facts of the case briefly stated, show that in the little village of Melissa in Collin County, Texas, some parties had been for sometime creating a disturbance by shooting up the town, as it was termed. The constable was one George; he, being unable to detect the parties who were making a disturbance, applied to appellant, who was deputy sheriff and lived in a town some four or five miles distant in the same justice's precinct, to come over to Melissa and help him arrest the parties.

The fact that appellant was not so well known would enable him the better to discover and arrest them. Appellant and Wolford, Crawford and Barnett, on the evening before the night of the homicide, came over in a hack, arriving at Melissa about night-fall. Wolford, it appears, was to get with the boys, and according to the State's theory he induced them, particularly the deceased, to go and shoot up the town. According to the defendant's theory Wolford was to get with them, and if they went to shoot up the town he was to go along and help detect and arrest them. After they had been in town a short time Wolford and Barnett, going to Coffman's store, which seemed to be a rendezvous of the parties, and appellant and Crawford remaining in rear of the store; Wolford informed appellant that some of the boys had arranged to shoot up the town. Appellant told Wolford to go with them and get them to come across the railroad beyond the depot, and he and Crawford would go there and remain in waiting until they came. He described one of the parties as wearing a cap and that he was armed with two pistols. Wolford asked if he should do any shooting, and appellant advised him not to, but that if he did that he would not be arrested. In a short while Wolford and deceased came across and passed the depot in the direction of where appellant and Crawford were in waiting. When they got within eight or ten steps appellant commanded them to halt, whereupon Wolford ran north and deceased ran south. Appellant and his companion followed deceased who ran between the depot and a box-car, they still following. Crawford was a little in advance; appellant's pistol fired, and deceased ran a short distance and fell mortally wounded. Appellant and Crawford went to where he was. Appellant started to put handcuffs on him, and according to the testimony of the State told him he was not shot but scared. Deceased told him that he was shot and that defendant had shot him in the breast, whereupon appellant asked him how could he shoot him in the breast when he had his back to him running. When appellant discovered that deceased was shot he took the handcuffs off of him and went for a doctor. It seems the next day on the coroner's inquest appellant and Crawford were both witnesses and testified, in effect, that they did not know who did the shooting. Appellant denied doing the shooting, and his testimony indicated that he saw a tall man near the deceased who must have done the shooting. On the trial he testified that he had given his former testimony in because he was scared, did not know the law, and knew that he was innocent of intending to kill deceased. He further testified that when he was pursuing deceased he pulled out his pistol for the purpose of firing it into the ground and frightening deceased to make him stop; that he cocked the pistol and it was easy on the trigger, and while he was running his foot struck the railroad track and he fell and the pistol was accidentally discharged, which inflicted the wound on deceased; that he did not know deceased, and had no intention of shooting him. Deceased was a boy who lived in the town

of Melissa, about 16 years of age, and had been previously described to appellant, and among other things, he was told that he was wearing a cap; that he was armed with two pistols. Appellant was attempting to arrest him, from the description given him, for carrying said pistols when the homicide occurred. This is a sufficient statement of facts to present appellant's assignments of error.

Appellant complains that the action of the court in refusing to quash the special venire was error. He says the special venire, which was the jury for the term, was composed of 252 jurors, besides those drawn to be used as special venire when the original list was exhausted; that one special venire was drawn of 100 men out of this 252 prior to the time appellant's special venire was drawn, and when appellant's special venire was drawn the 100 names theretofore drawn were not replaced in the box, but his jury was drawn from the remaining 152 names. This, according to our opinion, was authorized by the recent act of the Legislature on the subject of drawing special veniremen. See General Laws of the Twenty-Ninth Legislature, pp. 17 and 18, article 647A, as amended.

Appellant contends that the court erred in refusing to allow the defendant to prove by the witness T. M. Beverly, Sheriff of Collin County, that the general reputation of the defendant for being a cautious and prudent officer, was good. We think this exception is well taken. Appellant was convicted of negligent homicide and that issue was squarely made before the jury under the indictment, and appellant was defending against a negligent act, and if he was a cautious and prudent officer, that would go to rebut the idea of negligence, and his reputation in that regard would be admissible. We understand the rule to be wherever an issue is made which brings into controversy the character of defendant, that he is authorized to prove that character by any relevant testimony, and his reputation in that respect was relevant. See Lockhart v. State, 3 Texas Crim. App., 567; Lee v. State, 2 Texas Crim. App., 339; and Johnson v. State, 17 Texas Crim. App., 573. For further authority see vol. 3, Ency. Ev., pp. 6 to 9 inclusive.

Appellant complains that the court erred in permitting the State to prove by its witness, Cleve McBee, that he heard Lee Wolford say to the deceased on the night in question to take his (Wolford) pistol and go shoot up the town; that he would take it and shoot up the town himself if he didn't. This testimony was objected to because it was hearsay, immaterial and irrelevant; not shown to be in the presence of the defendant; not known to him prior to the difficulty and he could not be bound thereby. The court permitted the witness to testify, and he gave in evidence as follows: "Lee Wolford told Mack Guffey (deceased) and me to take his pistol and go shoot up the town, and that he would go take it and shoot up the town if we did not, and I told him that the officers were down east, and Lee Wolford said, 'No, they are all up in town behind the stores' and

Lee said, 'They would not catch us here' and I told him I would not do it, and I turned and went back down in town, and left them there talking. This was about half an hour before the shooting and the defendant was not present." The court certifies that the evidence previously introduced in this case showed that the defendant was not present when this conversation took place, and no evidence of whether or not the defendant had notice of it, and that the statements detailed by the witness as above set out were varied and contrary to the declarations made to Lee Wolford by the defendant in person regarding what occurred in Coffman's store. Referring to the testimony of the witness Crawford on this point, it will be seen that he testified that Wolford came back to where he and appellant were and said they were going to shoot up the town, and defendant said, "If they shoot it up you see who it is, and you can arrest them if you want to," and Wolford said, "Must I help them shoot up the town?" Defendant said, "No, we had better not shoot up the town." "Wolford said, just before that, he could get them out. The question was asked what Saye told him about how to bring them out or where to bring them to." Witness answered, "I don't know"; "He says will you come out with them; and Wolford says, 'Now if I shoot will you pull me?' and he says, 'No, we would not do that.' Witness was asked 'which way was Wolford to bring them if any way, when he was talking to Saye' and in reply, 'He told them to bring them across the railroad.'" From this it evidently appears that with the knowledge, if not by the suggestion of appellant, Wolford was to bring the parties out who were to shoot up the town, and that he was to bring them where appellant and his companion expected to station themselves, but it does not distinctly appear that Wolford, with the knowledge of appellant, was to induce the parties to shoot up the town. Of course, if there was a conspiracy on the part of appellant and his companions to induce deceased and his companions to commit an unlawful act in order that they might arrest them, all of this testimony was admissible against appellant. So if Wolford, with the knowledge and consent of appellant, induced deceased to arm himself and go out with him and they would shoot up the town in order that appellant might have the opportunity to arrest deceased, then the act of Wolford as one of the conspirators would be the act of appellant, and this testimony would be admissible, but the reference of the court to the testimony on this point does not make it clear that there was a conspiracy between appellant and Wolford of the character suggested. If Wolford was merely to go along with the parties, not himself inducing them to embark in the enterprise, this would not affect appellant; we notice that Wolford did induce the parties to shoot up the town. Of course, such conduct was reprehensible. As the bill is presented, we are inclined to believe that neither this testimony, nor this same character of testimony coming from two other witnesses, was admissible against appellant.

While as a general proposition, it is admissible for appellant to state his intent or non-intent in doing an act, we do not believe it is competent for him to state what his feelings were after the act was committed and as a result thereof. So, we believe it was not competent for appellant to state that he was very much surprised and very much grieved when he found the boy was shot, and the court did not err in excluding this testimony.

Appellant criticises the charge of the court on negligent homicide. The court gave the following charge on this subject: "If any person in the performance of a lawful act shall by negligence and carelessness cause the death of another, he is guilty of negligent homicide of the first degree. In this connection you are instructed that at the time Mack Guffey was killed defendant was a deputy sheriff of Collin County, and as such officer, had a right to carry a pistol and had the right to arrest the deceased, Mack Guffey, if he believed Mack Guffey was carrying a pistol. Now if you find and believe from the evidence before you, beyond a reasonable doubt, that defendant shot and killed Mack Guffey with a pistol on the 16th day of December, 1904, in Collin County, Texas, and you further find and believe from the evidence that at the time of the killing deceased was running and that defendant was running after him for the purpose of arresting him for carrying a pistol, if he was, and you further believe from the evidence that there was no apparent intention on the part of defendant to kill the deceased, and you further believe from the evidence that at the time of the shooting that defendant shot towards the deceased with the intention to scare him, or induce him to stop and not with the intention to hit him, and you further believe from the evidence that in so shooting defendant was not exercising such care and caution, under all the facts and circumstances of the case, as an ordinarily prudent person would have exercised under the same or similar circumstances, then you will find the defendant guilty of negligent homicide of the first degree and assess his punishment," etc.

Among other grounds of objection, appellant says there was no evidence on which said charge could have been predicated; that said charge is too restrictive in that it authorizes the arrest of deceased by appellant if he was carrying a pistol; that appellant was authorized to arrest deceased if he had been informed that deceased was carrying a pistol; that said charge was further erroneous in that the testimony of the defendant was, which was all the testimony in the case on the point, that the pistol was not intentionally discharged but was discharged accidentally. In other words, that there was no testimony showing or tending to show that appellant shot toward the deceased with the intention of scaring him. On a question of this character, the State is not bound by any particular testimony, much less by the testimony of the appellant himself, but there must be some testimony authorizing the court to give a charge against the defendant. Aside from the fact that deceased was shot by a pistol in the hands of appel-

lant, there is no direct testimony to show that the defendant shot toward the deceased with the intention of scaring him; however, the circumstances connected with this killing would suggest that there was sufficient in the case to authorize the court to predicate a charge of negligent homicide on this line. Appellant first denied shooting deceased altogether, then subsequently admitted that he had shot him accidentally. The charge, however, might be subject to the criticism of appellant that it was too restrictive in that the court seemed to require that deceased was carrying a pistol. Of course, appellant was authorized to arrest deceased if he believed he was carrying a pistol on information received by him regardless of whether in fact he had a pistol or not. However, it does not seem to be controverted that deceased had two pistols on at the time he was shot. We would further suggest that the charge should have informed the jury that in the act of handling the pistol there must be an apparent danger of causing the death of the person killed.

We would further suggest as to the witness Crawford, who was introduced by the State, he was evidently an accomplice; having formerly been under indictment for the same offense, the law made him an accomplice, and the charge should have been given, as to this witness, on accomplice's testimony.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*