## STATE v. CHARLES HUMPHREY.[1]

January 20, 1928.

No. 26,455.

**Decedent's statement to his mother admissible as part of res gestae.**

[1] While decedent was being held by one person another struck him resulting in injuries from which he died. When assaulted he became unconscious, his skull being fractured, and up to the time of making the statement herein mentioned he was suffering a mental shock and great physical pain which continued uninterruptedly and with increasing severity. Upon arriving at his home about 40 minutes after the assault he said to his mother, "Oh, mother, my head hurts me. One held me while the other hit me." *Held*, the statement admissible as part of the res gestae.

[1]Reported in 217 N. W. 373.

**When accused may show that he actually possesses certain personal characteristics.**

[2] A defendant in a criminal case in advancing good character to show the improbability of his guilt is not limited to general repute but may show as a fact that he possesses a certain disposition or certain personal characteristics.

Criminal Law, 16 C. J. p. 577 n. 85; p. 582 n. 28 New.

Defendant appealed from an order of the district court for Ramsey county, Olin B. Lewis, J. denying his motion for a new trial. Affirmed.

*G. Winthrop Lewis,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, *Christopher D. O'Brien, Jr.* County Attorney, and *Charles L. Hayes,* Assistant County Attorney, for the state.

WILSON, C. J.

Defendant appealed from an order denying his motion for a new trial after he was convicted of manslaughter in the first degree.

At about midnight on May 27, 1926, Ashley Robinson, Hannah Johnson, Francis Thompson, Margaret Chase, Eugene Lacey and Sylvia McClay, all high school students, were on their way home from Mechanic Arts high school in St. Paul where some of them had participated in a school play. At Rice street and Iglehart avenue they met defendant, who without provocation became offensive. He struck at Lacey, missed him, and hit his companion, Miss McClay. Defendant had come from a nearby pool room and was followed by two companions, Steve Hartigan and George Keating. The school crowd hurried west on Iglehart but were followed by the three others, and after going a half block defendant struck Ashley Robinson. All continued on Iglehart to West Sixth street. Here they turned to the left and went about a half block where defendant held Robinson while Hartigan struck a blow on the left side of his head causing him to become unconscious. The school crowd sought safety in a nearby apartment building and the aggressors left.

When Robinson regained consciousness he was delirious for a short time. Afterwards he and his companions took the girls home. He complained frequently of pain in his head; asked one of his companions to feel of his wounded head; he grew weaker, staggered and had to be given assistance. One of the boys accompanied him to his home, which he reached a little before 12:45 a. m. There was a swelling back of his left ear. His mother called assistance and a doctor. At about the time last stated Robinson exclaimed to his mother: "Oh, mother, my head hurts me. One held me while the other hit me." He soon became unconscious again and died on the following day. An autopsy disclosed that the cause of death was a fracture of the skull and cerebral hemorrhage. There was a large blood clot in the left temple with a stylated fracture at the base of the temple bone, which means that there was a small hole with radiating, star-shaped fractures running from the fracture itself.

The proof of defendant's guilt is strong and convincing. Perhaps it is augmented by most reprehensible conduct which insensibly corrodes the vital principles of virtue and veracity. The appeal however scarcely challenges the sufficiency of the evidence but is directed at alleged errors of law.

1. The claim is made that it was error to receive in evidence the statement which Ashley Robinson made to his mother as above mentioned. We think not. The statement was made within about 40 minutes after the blow was struck, and in the meantime deceased was suffering not only a mental shock but great physical pain which continued uninterruptedly and with increasing severity. The excitement of the assault and its attendant circumstances still prevailed, and the statement was properly received as a part of the res gestae. Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812; Meyer v. Travelers Ins. Co. 130 Minn. 242, 153 N. W. 523; Roach v. G. N. Ry. Co. 133 Minn. 257, 158 N. W. 232; Clark v. Davis, 153 Minn. 143, 190 N. W. 45; Perkins v. G. N. Ry. Co. 159 Minn. 492, 496, 199 N. W. 891; Linderoth v. Kieffer, 162 Minn. 440, 203 N. W. 415.

2. Other assignments of error relate to character testimony. Mrs. Anderson was asked: "Now, from what you know about Charles Humphrey, will you state what you believe his character to be?" An objection thereto was properly sustained. But soon thereafter she said she knew his reputation as a peaceful and lawabiding citizen in the community in which he lived and further testified that such reputation was good. This covered what was sought by the question erroneously framed, the answer to which was excluded.

This witness was also asked: "Would you say that he had a violent temper?" The court sustained an objection that this was included in the character testimony already given and too remote since the witness had had nothing to do with defendant since February, 1925. A defendant in advancing good character to show the improbability of his guilt is not limited to general repute but may show as a fact that he possesses a certain disposition of which general repute is only evidence. Ordinarily the question in such a case as this is permissible. State v. Lee, 22 Minn. 407, 21 Am. R. 769. But in the instant case when counsel suggested that he intended to pass from the rule of general repute to actual characteristics and the objection was made the court said: "I think perhaps if you are going into that we will take it up tomorrow. My present impression is you can only show general reputation." This left the matter open for defendant's counsel to again press the inquiry and present authorities to the court, which he did not do. It cannot now be urged.

The witness Catherine Tschida testified that defendant's reputation as a peaceful lawabiding citizen was "good," and also that "he was not quarrelsome." No error can be predicated upon rulings in her testimony.

Robert Deleen, under whom defendant had worked for a few months, called as a character witness, testified that he had never heard defendant's veracity discussed and that he did not know his reputation for being a peaceful lawabiding citizen. He was not permitted to testify that he had never had any trouble with defendant. This was immaterial.

Affirmed.

HILTON, J. took no part.