35 So.2d 562

### WILLIAMS v. STATE.
### 7 Div. 911.

Court of Appeals of Alabama.
June 30, 1947.

Rehearing Granted Oct. 28, 1947.

Rehearing Denied Dec. 16, 1947.

Ben F. Ray, of Birmingham, and A. L. Crumpton, of Ashland, for appellant.

A. A. Carmichael, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant, a police officer of the town of Lineville, while on duty as such officer, shot and killed Hubert Morrow. He was thereafter indicted for murder in the first degree. His trial before a jury resulted in his conviction for manslaughter in the first degree and his punishment was fixed at imprisonment in the penitentiary for a term of five years.

The shooting occurred in the business section of Lineville late on a Saturday afternoon in May 1946. Numerous persons witnessed the occurrence, or parts thereof. The variety of the accounts of the affair given by these many witnesses results in a veritable factual jungle with many criss crossing trails, and no well lighted pathway.

We believe a fair inference of the evidence presented by the State to be that the

deceased, Lloyd Gregg, and W. A. Morrow, father of the deceased were in or near a filling station close to the business section of Lineville. Deceased's father had been drinking heavily. The appellant and another officer, Mr. Boyd, contacted the trio and told the father he was getting pretty tight, and he would have to get out of town or be locked up. The father agreed he was getting drunk and that he would get out of town. The trio then started up the street, but meeting an acquaintance stopped and engaged in conversation. The officers again accosted them. Appellant told the father he had instructed him to leave town, and caught the father by the arm. The deceased then told appellant to wait a minute, that he was going to take his father away as he had promised, and caught hold of his father's other arm. There was some jerking of the father back and forth by appellant and deceased, when the appellant pulled his black jack and attempted to use it on deceased. The deceased took the blackjack away from appellant in the ensuing scuffle. The appellant then pulled his pistol and told deceased to come on or he would shoot. The deceased then told appellant he would "go for that," and appellant and deceased started off up the street.

According to some state witnesses appellant held deceased by his left arm, with his pistol in his right hand. After they had proceeded about 40 or 50 feet up the street appellant pushed deceased into the street, which was two or three feet lower then the sidewalk, and shot him, appellant being on the sidewalk above. The bullet penetrated deceased's heart and he died in a few moments.

The tendency of the evidence introduced by the defense was to the effect that upon deceased's interfering with the efforts of appellant and the other officer Mr. Boyd to take deceased's father to jail appellant told deceased he would have to arrest him for interfering with an arrest, to which deceased replied, "No, by God you won't." It became necessary, because of deceased's resistance, for appellant to use his blackjack in an effort to subdue deceased. In the ensuing struggle deceased took the blackjack and was about to over power appellant when he pulled his gun. Deceased then agreed to go, but according to appellant, told appellant he would cut his God damn guts out. Again, according to appellant, they had proceeded up the street a short distance when deceased took "a running start and hit me in the left side and jerked back all at the same time and tore my hold loose and I went out in the street. * * * As quick as I hit the ground I whirled around, he was bringing his right hand out of his pocket when I turned around and he run his left hand in his pocket and said I don't believe that God damn thing will shoot and started toward me and when he did, we were close together, I shot him."

Appellant claimed he was on a ledge between the sidewalk and the street at the time he fired.

An ordinance of the Town of Lineville prohibiting the interfering with any police officer in the performance of his duty and fixing a penalty for such acts was introduced into evidence by the defense.

Testimony was also presented by the defense to the effect that about six months previous to this homicide the appellant had arrested the deceased for drunkenness, and confined him; that when deceased's father came to try and get deceased released this appellant did release the deceased, but reincarcerated him when deceased cursed appellant and threatened to kill him, the deceased being confined on this occasion until the next morning.

The theory of the defense in the trial below was that the killing was justifiable, in that appellant had the legal right to arrest the deceased, and had to kill him in order to repel a threatened attack by the deceased in his effort to resist arrest.

■ An officer may arrest any person without a warrant, on any day and at any time, for any public offense committed, or breach of the peace threatened in his presence. Sections 154, 155, Title 15, Code of Alabama 1940. An officer is not under the duty to inform the person arrested for an offense committed in his presence of the nature of the charge. Lakey v. State, 24 Ala.App. 273, 134 So. 455; Rutledge v. Rowland, 161 Ala. 114, 49 So. 461; Section 155, supra. And when the official capacity

of the arresting officer is known to the person arrested a statement of the officer's authority is not required. Sanderson v. State, 168 Ala. 109, 53 So. 109. In all cases of attempted legal arrest an officer is under a duty to act aggressively and go forward in perfecting the arrest. He may repel force with force and need not give back. If the party making resistance is unavoidably killed, the homicide is justifiable. Birt v. State, 156 Ala. 29, 46 So. 858; Dyson v. State, 28 Ala.App. 549, 189 So. 784.

The above principles are set forth as a background for what we consider the significant question in this case, and that is whether the lower court erred in sustaining the state's objections to questions propounded to two character witnesses seeking to show appellant's reputation or character as a police officer. During the direct examination of defense witnesses, Mr. Tom Bell, and Mr. Pride Stewart, both councilmen of the Town of Lineville, the record shows the following as to each witness respectively:

"Q. Mr. Bell I will ask you if you know or think you know Mr. Williams' reputation as a police officer in Lineville from the time he was a policeman?

"By Mr. Hardegree: We object to that form.

"By the Court: Sustain the objection.

"By Mr. Crumpton: We except.

"Q. You are familiar with Mr. Williams of course as a police officer? A. Yes, sir.

"Q. I will ask you to state whether or not he has made a good, efficient, capable and kind police officer from the time he has been working there.

"By Mr. Hardegree: We object.

"By the Court: Sustain the objection.

"By Mr. Crumpton: We except.

"Q. Are you a member of the City Council? A. Yes, sir.

"Q. Do you know, or think you know his character as a policeman there during the time he has been on the police force in Lineville?

"By Mr. Hooten: We object.

"By the Court: Sustain the objection.

"By Mr. Crumpton: We except."

The admissibility of particular traits of character sought to be introduced depends on the nature of the crime charged and the moral wrong involved. If the trait of character is one that tends to raise an inference that the accused is of such a character that he is not the type of person that would commit the offense charged, then evidence of such trait of character is of probative force and should be admitted. Griffin v. State, 26 Ala.App. 473, 162 So. 547; Mitchell v State, 14 Ala.App. 46, 70 So. 991; Wheat v. State, 18 Ala.App. 554, 93 So. 209. In the Griffin case, supra, this court held that it was error to exclude testimony as to good character and reputation for honesty and integrity of the defendants in a prosecution for selling or removing property upon which another had a lien, though witnesses had testified generally to the good character of the defendants.

Some of the applicable authorities from other jurisdictions that might be cited in support of the above doctrine are as follows: Amos v. State, 209 Ark. 55, 189 S.W. 2d 611 (reputation for truth and morality admissible in prosecution for carnal abuse); State v. Hedding, 114 Vt. 212, 42 A.2d 438 (reputation as to drinking admissible in prosecution for driving while under the influence of intoxicating liquors); People v. Klemann, 383 Ill. 236, 48 N.E.2d 957 (reputation for chastity, morality, and decency, admissible in prosecution for moral offense with a young boy); Bara v. State 141 Tex. Cr.R. 7, 147 S.W.2d 250 (reputation for honesty admissible in prosecution for larceny); Pine v. State, 134 Tex.Cr.R. 396, 115 S.W.2d 918 (reputation for honesty admissible in prosecution for receiving stolen property); Friel v. State, 6 Okl.Cr. 532, 119 P. 1124 (reputation for not peddling liquor admissible in prosecution for unlawful sale of liquor); State v. Humphrey, 173 Minn. 410, 217 N.W. 373 (disposition as to temper admissible in prosecution for first-degree manslaughter).

In Brent v. State, 89 Tex.Cr.R. 544, 232 S.W. 845, and Jamison v. State, 35 Okl.Cr. 302, 250 P. 548, both homicide cases, the respective courts held in each case that character and reputation evidence for being a cautious and efficient police officer in those

308

cases was irrelevant since the respective officers were not in the performance of their duties as peace officers at the time of the homicides. It may be inferred from these two cases that a different ruling would have been made had the defendants been in the exercise of their official duties at the time of the killings.

In the Texas case of Saye v. State, 50 Tex.Cr.R. 569, 99 S.W. 551, the appellant, a deputy sheriff, had been convicted of negligent homicide, the killing occurring during an attempted arrest. The Texas Court of Criminal Appeals held in this case that the lower court erred in refusing the appellant the right to prove by the sheriff that his reputation for being a cautious and prudent officer was good.

In our opinion the questions as framed above were not defective because of vagueness. The phrase "reputation as a police officer," ex vi termini, conveys the meaning and necessarily includes the trait of character pertinent to this case as to reasonable and judicious use of firearms in performance of duty as such officer. In Balkum v. State, 115 Ala. 117, 22 So. 532, 67 Am.St.Rep. 19, our Supreme Court held that there could be no misunderstanding of what was meant by the question and answer, "That his character was bad for running after women." We are also of the opinion that allowance of proof of general good character of appellant, and of his good reputation for peace and quietude, which was permitted in all instances, including the examination of the witnesses Bell and Stewart, did not affect appellant's right to prove his reputation and character as a police officer. To so hold we would have to ignore the commonly known fact that while a person might enjoy a good reputation for peace and quietude while in a nonofficial status, the weaknesses of human nature sometimes alters that same person's character when he is vested with authority, and armed with a badge and pistol.

In view of the fact that the defense of this case was based on the theory that appellant's action in killing the deceased was justified in that the homicide resulted in the performance of his duty as a police officer, it is our opinion that appellant's reputation and character as a police officer was highly relevant to the issues developed, and that the lower court erred in sustaining the objections to the questions seeking to inject testimony relating to this fact.

Other questions are presented by the record and argued in brief of counsel. In our opinion such questions are unlikely to arise during another trial of this case and we therefore refrain from discussing them.

Reversed and remanded.

CARR, J., dissents.

On Rehearing.

HARWOOD, Judge.

In the brief and supplemental brief in support of the application for rehearing in this cause the Attorney General argues that our opinion in this cause is erroneous on the following grounds.

First, that the questions as to the reputation of the appellant as a police officer are too general, and do not call for a trait of character germane to the offense here charged. This argument is already covered in our opinion and we do not think that further discussion is indicated.

The Attorney General argues further that: "These questions propounded by appellant's counsel, to which objection was sustained, did not limit the time of the reputation of the appellant as being prior to the date of the offense. The question as framed called for evidence as to the man's reputation as a police officer up to the date of trial. Conceding for the sake of argument, the relevancy of such evidence and antedating the crime, it is a rule of law that where both competent and incompetent testimony is called for by a single question, the court may properly sustain objection to the question, since the court is not bound to separate the legal from the illegal."

This argument in support of the trial court's action in sustaining the state's objection to the questions above set out was not presented at the oral argument made on submission of this cause nor in the original briefs filed by the State, and the

writer of the opinion overlooked this point until called to our attention in the brief of the Attorney General filed in support of the State's application for a rehearing.

 Further study of this record by this writer has produced no facts from which it can be inferred that the defendant below ceased to be a policeman after the homicide, or that he did not occupy such a status at the time of the trial below. Inquiries to show a defendant's reputation for peace and quietude, and the questions now being considered are clearly of that character, must be limited to the time preceding the commission of the offense for which he is being tried. When not so limited they are properly excluded. Jenkins v. State, 212 Ala. 484, 103 So. 458; Smith v. State, 197 Ala. 193, 72 So. 316. The questions under consideration are framed without limiting the scope of their operation to the time preceding this homicide, but by their verbiage included the time up to the trial below. As a result competent and incompetent testimony was called for by each question. Under such circumstances a court is not bound to separate the admissible from the inadmissible and will not be put in error for sustaining an objection to a question containing such dual characteristics. Brooks v. State, 32 Ala.App. 389, 27 So.2d 48. We therefore now conclude that error cannot be cast upon the trial court for sustaining the objections to the questions now discussed for the reason that the same were not properly limited to the period of time preceding the homicide. We adhere however to our original view that had the questions been properly predicated then the objections thereto should have been overruled.

We have found no other questions raised by the record which in our opinion warrant discussion. Defendant's refused written charges 1, A-1, A-2, and.A-3 are affirmative in nature and were properly refused under the developed evidence of this case. Refused written charges 20, and B were invasive of the province of the jury, or covered by other written charges given at the request of the defendant.

In view of the above discussion it is our opinion that the application for rehearing should be granted, and this cause affirmed. It is so ordered.

Application for rehearing granted, and cause affirmed.

CARR, J., concurs in the conclusion.