106 So.2d 257

Leonard **KENNEDY**

v.

**STATE.**

**8 Div. 286.**

Court of Appeals of Alabama.
Aug. 19, 1958.
Rehearing Denied Sept. 9, 1958.

Pilcher & Floyd, Gadsden, for appellant.

John Patterson, Atty. Gen., and Wm. C. Younger, Asst. Atty. Gen., for the State.

CATES, Judge.

Kennedy stands convicted of possessing prohibited liquors and of resisting the officers who arrested him.

Considering the evidence in the light of the jury's verdicts of guilt as to both offenses, we find:

Between two and three o'clock in the afternoon of March 8, 1957, three deputy sheriffs of Marshall County with a search warrant went to Kennedy's home on Sand Mountain some three miles north of Albertville.

To gain entrance after knocking in vain, the officers forced some bars off the front door, whereupon Mrs. Kennedy finally came to the door. They presented the warrant to Kennedy who read it.

In the kitchen the searching party found a glass pitcher with a few residual drops which had the odor of wildcat whiskey. Whereupon, one of the officers unscrewed the trap underneath the kitchen sink and retrieved about a half pint of the moonshine. They put it in a pint bottle. There was testimony (without any defense objection) of other caches of beer and whiskey around and about the house, though apparently off Kennedy's curtilage. The trial judge properly charged the jury that they could not find Kennedy "guilty for any beer or liquor that was found outside the house." Hence, no error arises from the reception of testimony of these remote finds.

After the discovery the officers told Kennedy he would have to go with them.

As Mr. Massey, one of the deputies, related,

"A. Well, he said he wasn't going; if he went we would have to carry him. We rassled with him about 5 or 6 minutes in the house. Finally, Hipp got him by one arm and Allison by the other. I finally got my arms around him to take him out of the house.

"Q. Did you have to use force to get him out of the house? A. Nothing only manual force—just carrying him."

Kennedy contends that the State failed to prove that the liquid in the sink trap was fit to drink, i. e., it was a "beverage."

■ Code 1940, T. 29, § 125, sets out the general rule of evidence for prohibition prosecutions, i. e., that the liquor in question has the same color, odor, and general appearance, etc., of a prohibited liquor is prima facie evidence that it is prohibited. Two of the deputies testified (without objection) that the odor was that of wildcat or moonshine whiskey. See Gray v. State, 29 Ala.App. 568, 199 So. 255; Roughton v. State, 38 Ala.App. 17, 77 So.2d 666.

The "pint bottle" or jar containing the liquor from the trap was in evidence along with its contents. Kennedy claims that this jar had garbage and coffee grounds along with the whiskey to such an extent as to make the mixture undrinkable.

■ Since the liquor was before the jury, it seems to us the question of fact was, in the circumstances here presented, exclusively within their province as triers of fact. Moreover, the jury could have inferred Kennedy possessed it in potable form before it was poured down the drain.

■ It is also contended that the State failed to show all the ingredients of a lawful arrest. We conclude the finding of the pitcher in the kitchen and of the whiskey in the sink trap, coupled with Kennedy's being in the doorway between the kitchen and the living room when presented with the search warrant, were sufficient to allow the jury to infer that he, the head of the household, was the possessor of the almost-disposed-of whiskey.

■ Thus, for an offense committed in their presence—possession being a continuing act—the deputies could arrest him without a warrant, nor did they need to inform him of the cause of arrest, Code 1940, T. 15, §§ 154, 155; Williams v. State, 33 Ala.App. 304, 35 So.2d 562; Wilson v. Orr, 210 Ala. 93, 97 So.2d 133.

■. We think the showing of the search warrant, which is addressed to the "Sheriff or any Constable of said County," was a prima facie disclosure of the deputies' being authorized peace officers.

Attached to his motion for a new trial, counsel for Kennedy has an affidavit that the bailiff, who had the jury in charge, took it upon himself to go home leaving the sheriff and one of the State's witnesses, a deputy sheriff, in charge of the jurymen during the remainder of their deliberation.

■ Whether or not this seeming misconduct rises to prejudicial error, we need not decide. The motion for a new trial is shown by the record to have been called to the attention of the trial judge on August 26, 1957. The verdict and judgment were rendered on July 24, 1957.

■ Under Code 1940, T. 13, § 119, filing and presenting the motion within thirty days is jurisdictional in a one-county circuit, as the 27th Judicial Circuit. Therefore, the trial judge had no recourse but to sustain the solicitor's motion to strike Kennedy's motion for a new trial.

■ We have carefully considered all questions raised in brief and by assignment of errors, and after a complete ex-

amination of the entire record as required by Code 1940, T. 15, § 389, we conclude the trial was free of prejudicial error.

Affirmed.