HARRIS, Judge.
Appellant was put to trial upon an indictment charging him with murder in the first degree. At arraignment, in the presence of counsel, he pleaded not guilty. The jury returned a verdict finding appellant guilty of murder in the second degree and fixed his punishment at thirty years in the penitentiary. On proper motion the Court found appellant indigent and directed that he be furnished with a free transcript. Trial counsel was appointed to represent him on this appeal.
The evidence was in sharp conflict which made and presented a jury question. The evidence adduced by the State tended to show that appellant fired a pistol at his wife while she was holding their young son in her arms. The shot was made at close range — not more than three or four feet— and grazed his wife’s cheek and entered the head of the child resulting in his death. Appellant did not testify but his wife testified in his behalf saying that when she went in the bedroom to pick the child up from the couch, she turned and bumped the pistol in her husband’s hand and the pistol went off and entered the head of their child. If her testimony was believable the pistol went off accidentally when she bumped it in her husband’s hand. She denied that she and her husband had had a quarrel before the shooting. She stated that her husband was drunk or well under the influence of intoxicating liquors and she saw him go in the back room and come out with a pistol in his hand and she told him to put the pistol up as she was afraid of guns. She admitted that her husband was violent when he was drinking and he had struck her before when he was drunk or drinking and that he had also gotten in fights with the police. She decided to get her baby child and the other children and leave home until her husband sobered up. She claimed she did not know her husband had followed her into the bedroom with the pistol until she picked the child up in her arms and turned to leave the bedroom and that in turning she bumped the pistol in her husband’s hand causing it to discharge. She was thoroughly impeached on the question of whether she and her husband had a quarrel prior to the shooting.
After the shooting appellant took the three-year-old child and drove him to the emergency room of the hospital in Ozark, Alabama, and was admitted to the hospital by Mr. Cody Cain, a security guard on duty at the hospital the night of the shooting which was April 17, 1976. Mr. Cain testified that appellant was cursing and threat *1259 ening everyone in the hospital saying he had shot his baby and if they let him die, he was going to “kill every _ _ _in Ozark.” Mr. Cain further testified that appellant’s wife came in the hospital and sat on the floor just outside the emergency room and he saw she was bleeding from her face. Mr. Cain went to the telephone and called the Ozark Police Department. After making the call he saw appellant run out of the hospital, get in his car and leave at a high rate of speed.
Police Officers John Nicholson and Gor-dan Kemp responded to the call and stopped appellant as he was driving away from the hospital at high speed without lights at ten o’clock at night. Appellant made a physical attack on the officers and had to be subdued. Appellant kept telling the officers over and over again that they “were going to have to kill him because he had just shot his baby.” The officers finally subdued appellant and put him in the back seat of the patrol car and he either kicked or knocked out the ear window. A Deputy Sheriff arrived at the scene and they put appellant in the Deputy’s car and he was carried to the hospital and then to jail. Officer Kemp stated that during the fight to control appellant he smelled alcohol on him and in his judgment appellant was intoxicated.
Somewhere between appellant’s house and the hospital he threw the pistol out of the car. The pistol was found and turned over to the officers.
Dr. G. R. McCahan, Jr., an Assistant State Toxicologist, performed a postmortem examination on the body of the deceased child and determined the cause of death to be the result of hemorrhage and trauma from a penetrating projectile to the head and brain. He removed the slug from the brain and turned it over to Mr. Dale Carter, a Criminalist and Director of the Enterprise Laboratory of the Alabama Department of Toxicology and Criminal Investigation.
Mr. Dale Carter testified that he received the slug from Dr. McCahan and also received a pistol from one of the officers which was identified as being used in the shooting of the child. His qualifications as a ballistics expert were shown and he stated that he test-fired the pistol several times and made a comparison with the bullet removed from the skull of the deceased. He further testified that the bullet identified to him as being removed from the body of the child was fired through the barrel of the pistol that was turned over to him.
Deputy Sheriff Nelson McLeod testified that after he put appellant in jail he went to his house that night with Officer Nicholson and in the living room either on the floor or the couch they found four .38 caliber unspent bullets.
The pistol was introduced into evidence over the objection of appellant that it was not shown to be connected with appellant. The State countered that the ballistics expert testified that the slug removed from the body of the deceased was fired from the barrel of that particular weapon. The Court overruled the objection and the pistol was admitted into evidence.
At the close of the State’s case in chief appellant moved to exclude any evidence concerning murder in the first degree as the State had failed to establish any sort of intent or premeditation. The Court overruled the motion saying:
“THE COURT: I’m going to overrule it. There’s two possible theories in the case as far as first degree murder is concerned and one would be an actual premeditated, malicious, willful and deliberate intent to shoot the boy. The other would be a willful, deliberate, malicious and premeditated attempt to shoot the mother and accidentally shoot the boy, but there are two — the jury has the option to either believe that he willfully and premeditat-edly and maliciously and deliberately shot the boy or that he willfully, premeditat-edly, deliberately and maliciously shot at the mother and then hit the boy. It’s up to the jury to decide from the facts as the jury has heard them.”
Several witnesses testified for the defense regarding their contacts with appellant and his wife during the day of the shooting. They all testified that appellant *1260 was drinking during the day but they did not observe any visible conflicts between appellant and his wife. The testimony developed that appellant and some of his friends had been drinking whiskey, vodka and beer all day and they consumed the whiskey and vodka and went to the State store and got a new supply.
Appellant’s fourteen-year-old son testified that he had seen his father drunk before and that he was drunk on the night of the shooting.
On rebuttal the State called Mr. Cody Cain and Police Officer John Nicholson. Mr. Cain testified that appellant’s wife made a statement to him at the hospital the night of the shooting which he wrote down. He was permitted to read the statement as follows:
“She told me that when he got the pistol, she grabbed the baby and started to run. He shot at her and the bullet hit the baby and she did not know she had been shot until she got to the hospital.”
Officer Nicholson stated that Mrs. Wood told him that on the night of the shooting she and her husband had been arguing; that she picked up her son and started to leave the room and her husband took a pistol and shot her.
Appellant filed a motion for a new trial but this motion was not kept alive and a discontinuance resulted thereby. The Court did not err in granting the State’s motion to strike the appellant’s motion for a new trial where a discontinuance had occurred. Kennedy v. State, 39 Ala.App. 588, 106 So.2d 257.
Appellant contends that the trial court abused its discretion in denying his motion for a mistrial after two empaneled jurors made known to the Court that they knew appellant’s wife. Upon further questioning by the trial court one of the jurors said she could render a fair and impartial verdict but juror Gassett said he could not and he was excused from the jury. One of the prosecuting attorneys suggested to the Court that he could order some talesmen to come in. The defense attorney agreed saying, “We can see who is still here.” Three women came forward, one of whom said she would be biased in rendering a verdict and the other two told the Court they were not biased and could render a fair and impartial verdict. The trial judge asked defense counsel if he would be satisfied to accept one of the women to replace Mr. Gassett and he chose Jeanette Turner to replace Mr. Gassett and the exchange was made.
From the record:
“THE COURT: Now at this time, I want to know if the — if you waive your right to a struck jury and if the jury as sitting is acceptable?
“MR. EMERY: Yes, sir. We waive that right and the jury is acceptable.
“THE COURT: Mr. Wood, do you understand what has transpired?
“MR. WOOD: Yes, sir.
“THE COURT: Do you go along with what your counsel has said?
“MR. WOOD: Yes.
“THE COURT: You’re satisfied with the jury as it sits?
“MR. WOOD: Yes, sir.
“THE COURT: And you’re satisfied that Mrs. Turner will be substituted for Mr. Gassett?
“MR. WOOD: Yes, sir.”
It is crystal clear that appellant and his counsel expressly waived a struck jury and that the trial court did not abuse his discretion in failing to grant a mistrial. McGuire v. State, 239 Ala. 315, 194 So. 815.
In Singleton v. State, 288 Ala. 519, 262 So.2d 768, the Supreme Court held that with the consent of the State and the prosecuting attorney a defendant charged with a noncapital felony could waive a jury trial, enter a plea of not guilty and be tried by the Circuit Judge without a jury, and that such waiver is not violative of public policy.
We hold that the trial court in no wise abused his discretion in allowing appellant and his counsel to choose a replacement for a juror who was disqualified. The substituted juror was their choice and their choice alone.
*1261 There was no error in denying appellant’s motion to exclude the charge of murder in the first degree from consideration of the jury. In the case of Simpson v. State, 59 Ala. 1, the Supreme Court said:
“So, also, if there is the felonious intention to kill one, and the fatal blow falls on another, causing death, it is murder * * *.”
The trial court charged the jury on all four degrees of homicide and the action of the trial court in so doing was proper under the facts and circumstances of this case.
The trial resulted in the conviction of this appellant of murder in the second degree. This verdict of the jury resulted in the acquittal of the defendant of the charge of murder in the first degree. It follows therefore that questions presented relating to murder in the first degree only need not be considered. Davis v. State, 21 Ala.App. 474, 109 So. 385; Jarrell v. State, 22 Ala.App. 304, 115 So. 146; Goodwin v. State, 53 Ala.App. 498, 301 So.2d 261.
The order of proof and rebuttal testimony rests largely in the sound discretion of the trial judge, and this rule applies to testimony which more properly should have been offered as part of the case in chief. Snow v. State, 50 Ala.App. 381, 279 So.2d 552; Emerson v. State, 281 Ala. 29, 198 So.2d 613.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.